1  CAROL A. SOBEL SBN 84483
   LAW OFFICE OF CAROL A. SOBEL
2  429 Santa Monica Blvd, Suite 550
   Santa Monica, CA 90401
3  T. (310 393-3055 F. 310 393-3605
   E. Carolsobel@aol.com
4

5  Attorneys for Plaintiffs

6

7                    UNITED STATES DISTRICT COURT

8        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

9

10

11  CPR for SKID ROW, et al.,              Case No.: LACV 11-6274 JFW (CWx)

12            Plaintiffs,                  **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT OF**
13      vs.                                **MOTION FOR A PRELIMINARY**
                                           **INJUNCTION AND/OR A**
14  CITY OF LOS ANGELES,                   **DECLARATORY RELIEF**

15            Defendant.

16                                         Date:  October 3, 2011
                                           Time: 1:30 p.m.
17                                         Ctrm: 16  (Hon. John Walter)

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.      INTRODUCTION                                                                                  1

II.     STATEMENT OF FACTS                                                                            1

III.    CALIFORNIA PENAL CODE §403 IS UNCONSTITUTIONAL                                                3

        A.    Carving Out an Exception for Public Meetings Related to the Election          4
              Code Creates a Content-based Equal Protection Violation

              1.    Penal Code §403 is a content-based regulation                            4

              2.    Penal Code §403 violates Equal Protection guarantees                     8

        B.    Plaintiffs' Speech is Not Criminalized by Penal Code §403                     10

        C.    Penal Code §403 is an Unconstitutionally Vague Criminal Statute              10
              that Directly Affects Core Political Speech

              1.    Section 403 leaves an ordinary person of common intelligence           11
                    uncertain as to the prohibited conduct

              2.    Section 403 also impermissibly delegates basic policy matters          15

              3.    Section 403 abuts upon sensitive areas of First Amendment freedoms,    16
                    operating to inhibit the exercise of those freedoms

IV.     PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION                                 17

        A.    Plaintiffs Have Shown a Likelihood of Prevailing on the Merits               17

        B.    Plaintiffs are Likely to Suffer Irreparable Harm If No Injunction Issues     17

        C.    Defendant Will Suffer No Harm If the Injunction Issues                        18

        D.    An Injunction Is In the Public Interest                                       18

V.      THE BOND REQUIREMENT OF F.R.CIV.P. 65 SHOULD BE WAIVED                              19

VI.     CONCLUSION                                                                          19

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES:**

3   *ACLU v. Reno*, 521 U.S. 844 (1997)                                    6,11

4   *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006)   5,9

5
6   *Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equal.*,   18
    950 F.2d 1401 (9th Cir. 1991)

7   *Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)                 19

8   *Carey v. Brown*, 447 U.S. 455, 471 (1980)                              8

9   *Center for Bio-Ethical Reform v. Baca*, 533 F.3d 780 (9th Cir. 2008)   4,5

10  *Citizens United v. F.E.C.,* 558 U.S. _ , 130 S. Ct. 876 (2010)        3,6

11  *Cox v. Louisiana,* 379  U.S. 536 (1965)                               8,10

12  *Dombrowski v. Pfister*, 380 U.S. 479 (1965)                           3

13  *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486 (9th Cir. 1996)   17

14  *Edward J. Debartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*   4
15  485 U.S. 568 (1988)

16  *Foti v. City of Menlo Park*,146 F.3d 629 (9th Cir. 1997)              6,7

17  *Frisby v. Schultz*, 487 U.S. 474 (1988)                              7

18  *Gathright v. City of Portland*, 439 F.3d 573 (9th Cir.  2006)        17

19  *Galvin v. Hay*, 361 F.3d 1134 (9th Cir. 2004)                        8

20  *Gilleo v. City of Ladue,* 512 U.S. 43 (1994)                         7

21  *Glendale Associates, Ltd. v. N.L.R.B.,* 347 F.3d 1145 (9th Cir. 2003)   7

22  *Grayned v. City of Rockford*, 408 U.S. 104 (1972)                    11

23  *Guiterrez v. Municipal Ct.,* 838 F.2d 1031 (9th Cir. 1988),          18
    *vacated as moot,* 490 U.S. 1016
24  *Hague v. CIO*, 307 U.S. 496 (1939)                                   7

25  *Hunt v. City of L.A.*, 638 F.3d 703 (9th Cir. 2011)                  11,12,15,16-17

26  *Independent Living Center of So. Calif., Inc. v. Maxwell-Jolly,*     19
    572 F.3d 644 (9th Cir. 2009)
27  *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)        18

28  *Kolender v. Lawson*, 461 U.S. 352 (1983)                             3,11,12,16

*Lacey v. Arpaio*, 2011 U.S. App. LEXIS 11593(9th Cir. June 9, 2011) — 4

*Larson v. Valente*, 456 U.S. 228 (1982) — 6

*Mahoney v. Babbitt*, 105 F.3d 1452 (D.C. Cir. 1997) — 17

*Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) — 4

*Metromedia v. City of San Diego*, 453 U.S. 490 (1981) — 5

*NAACP v. Button*, 371 U.S. 415 (1963) — 3,11

*National Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988) — 5,7

*New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) — 9

*Nunez by Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) — 12

*Olivieri v. Ward*, 801 F.2d 602 (2d Cir. 1986) — 8

*Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U.S. 1 (1986) — 6

*Police Department of Chicago v. Mosley,*  408 U.S. 92 (1972) — 8

*RA.V. v.* City *of St. Paul,* 505 U.S. 377 (1992) — 5,7

*Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959 (9th Cir. 2002) — 19

*SEIU, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010) — 14

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001) — 18

*Snyder v. Phelps*, 131 S. Ct. 1207 (2011) — 14

*Sullivan v. City of Augusta*, 511 F.3d 16 (1st Cir. 2007) — 14

*Thornhill v. Alabama*, 310 U.S. 88 (1940) — 3

*United States v. Arizona*, 2011 U.S. App. LEXIS 7413 (9th Cir. 2011) — 18

*Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) — 3

*Whitney* v. *California*, 274 U.S. 357 (1939) — 6

*Winter v. NRDC, Inc.*, 129 S.Ct. 365 (2009) — 18,19

**STATE CASES:**

*County of Los Angeles v. Frisbie*, 19 Ca1.24 634 (1942) — 13

*Farraher v. Superior Court of Kern County*, 45 Cal.App. 4 (1919) — 12

*In Re Kay*, 1 Cal. 3d 930 (1970) — 1,5,10,12

iii

**CONSTITUTIONAL PROVISIONS:**

California Constitution, Article I, sec. 2     3

California Constitution, Article I, sec. 3     3

**STATUTES:**

Callifornia Elections Code §321     14

California Election Code §18340     *passim*

California Election Code §18541     15

California Penal Code §302     5

California Penal Code §403     *passim*

California Penal Code §626.8     4

## I.    INTRODUCTION

Plaintiffs bring this motion for a preliminary injunction to enjoin enforcement of California Penal Code §403, which makes it a misdemeanor to disrupt certain public meetings and assemblies.   The "meeting" at issue here is a monthly walking tour of Skid Row led by the police and other public officials for business owners in the area.   The purpose of the walk is to point out the grievous conditions facing homeless individuals and to enlist support for further repressive measures directed at this vulnerable population.

Section 403 was enacted in 1872. In all that time, it has been construed only once by the California Supreme Court to narrow its application in an attempt to avoid its obvious conflicts with modern First Amendment jurisprudence. *In Re Kay*, 1 Cal. 3d 930, 943 (1970). Other than non-substantive changes to account for renumbering, the statute has never been amended by the California Legislature since its enactment.

The unconstitutionality of the statute is clear and irremediable.  It provides a harsh and arbitrary tool for law enforcement to arrest individuals who do nothing more than engage in core expressive activity in an archetypal public forum, directing their speech to public officials, as here.   As set forth below, despite the narrowing construction given by the California Supreme Court in 1971, Penal Code §403 remains an impermissibly content-based statute aimed at core political expression.    It unlawfully distinguishes between categories of political speech, denying plaintiffs and others subject to it vagaries due process and equal protection of the law.   No compelling interest can justify Penal Code §403.  Accordingly, plaintiffs are entitled to a preliminary injunction to enjoin enforcement of §403 and a declaration of its unconstitutionality.

## II.    STATEMENT OF FACTS

On July 6, 2011, Pete White, a member of the organizational plaintiff, CPR for Skid Row, and co-director of the Los Angeles Community Action Network, a

1

community advocacy group on Skid Row, was arrested pursuant to Penal Code §403. White's arrest followed the threatened arrest of plaintiffs for engaging in protected First Amendment activity on a public sidewalk in downtown Los Angeles. Plaintiffs were protesting the actions of the Downtown Business Improvement District ("BID") for Central City East, which takes local business owners and others on guided tours of Skid Row to show what they perceive to be the ills of the area and enlist support for the BIDS' efforts to encourage police enforcement actions aimed at criminalizing and suppressing the homeless population on Skid Row.  Khan Dec. ¶3.

Lt. Paulson, of the Los Angeles Police Department ("LAPD"), first threatened arrest of those lawfully assembled on the sidewalk and further threatened that they would be charged with an unlawful conspiracy to violate Section 403 based on the fact that the group was handing out leaflets in support of their protest.  When the group continued to chant, Pete White was arrested and booked for a violation of Penal Code §403.  To date, no charges have been filed at the criminal court.  Khan Dec. ¶5.

On August 3, 2011, plaintiffs again went out to protest the Skid Row Neighborhood Watch Walk.  They did so after learning from their counsel that the City had agreed not to enforce §403 until its constitutionality had been determined by the Court.  Khan Dec. ¶6; Sobel Dec. ¶3.  However, once the August 3 protest began, Lt. Paulson again threatened to arrest plaintiffs for chanting from the public sidewalk as the Walk proceeded through Skid Row.  This time, she informed the plaintiffs that, while she would not arrest for a violation of Penal Code §403, she would arrest for a violation of California Penal Code §415, "disturbing the peace."  *Id.*  In each instance, plaintiffs did nothing more than carry signs and chant expressing  opposition to these public officials and the dehumanizing tours of residents of Skid Row.

The arrest of White has created fear among the participants of CPR for Skid row that they, too, would face arrest if they continue to participate in their lawful protest

activities.  Khan Dec. ¶5, lines 12-15; ¶7.

## III.    CALIFORNIA PENAL CODE §403 IS UNCONSTITUTIONAL

Plaintiffs bring a facial challenge to California Penal Code §403.  The United States Supreme Court has long recognized that a facial challenge may be brought to attack statutes impacting First Amendment rights[1] because "freedoms are delicate and vulnerable, as well as extremely precious in our society.  The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.  Because First Amendment freedoms need breathing room to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963) (internal citation omitted).

The chilling effect on the exercise of fundamental rights requires a prompt determination of the statute's constitutionality.  "If the rule were otherwise, the contours of regulations would have to be hammered out case by case – and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965).  As our courts have long recognized, the very being of the law threatens the less stalwart, curbing their expressive activities. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).  For this reason, the high Court has not hesitated to invalidate such laws when political expression and association is at stake. *See e.g., Citizens United,* 558 U.S. _ , 130 S. Ct. 876 (2010); *Kolender v. Lawson*, 461 U.S. 352, 358, n.8 (1983); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980); *Thornhill*, 310 U.S. 88.

In the Ninth Circuit, a First Amendment violation is shown where a plaintiff demonstrates that "'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.' ... Because it would be unjust to allow a defendant to escape

---

1.    All references to the First Amendment include expressive protections guaranteed by Article I, sec. 2 and 3 of the California Constitution.

1  liability for a First Amendment violation merely because an unusually determined
2  plaintiff persists in his protected activity, ... the proper inquiry asks 'whether an
3  official's acts would chill or silence a person of ordinary firmness from future First
4  Amendment activities.'" *Mendocino Environmental Center v. Mendocino County*, 192
5  F.3d 1283, 1300 (9th Cir. 1999) (internal citations omitted, bracketed edits in original,
6  ellipsis added). *See also Lacey v. Arpaio*, 2011 U.S. App. LEXIS 11593, *28-29 (9th
7  Cir. June 9, 2011).

8      There is no way to save §403. "Where a construction of a statute would raise
9  serious constitutional problems, courts 'will construe the statute to avoid such
10 problems unless such construction is plainly contrary to the intent of [the legislature].'
11 *Edward J. Debartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485
12 U.S. 568, 575 (1988)." *Center for Bio-Ethical Reform v. Baca*, 533 F.3d 780, 790 (9th
13 Cir. 2008) (bracketed edit in original).[2]  Instead, as is shown below, the plain language
14 of the statute, reflecting a clear legislative intent to distinguish between categories of
15 speech, including categories of "political" speech, precludes a construction of Penal
16 Code §403 that can save it from its inherent and fatal constitutional infirmity.
17

18 ─────────────────────────────────────────────
19     2. In *Center for Bioethical Reform*, the court considered the threat of arrest of
   anti-abortion activists pursuant to California Penal Code §626.8, prohibiting activities
20 outside a school that result in disruption of classroom instruction. The plain language
   of the statute "invited" a narrowing construction.   533 F.3d at 793.   The statute
21 expressly mandated that "[t]his section shall not be utilized to impinge upon the
   lawful exercise of constitutionally protected rights of freedom of speech or assembly."
22 *Id.* and P.C. §626.8. As the court noted, the Legislature "contemplated the possibility
23 that §626.8 might, if construed broadly, apply to constitutionally protected speech,
   and sought to prevent such an application." *Id.* In addition, the court emphasized that
24 §626.8 was written "expansively," using the term "impinge" rather than "violate" to
25 define its reach.   *Id.*   Based on this language, the Circuit concluded that the
   Legislature "meant to make the statute inapplicable where  First Amendment rights
26 are possibly affected[.]" *Id.*  There is no similar basis for finding even a scintilla of
27 evidence to support a legislative intent to restrict §403.
28

4

**A.   Carving out an Exception for Public Meetings Related to the Election Code Creates a Content-based Equal Protection Violation**

**1.   Penal Code §403 is a content based regulation**

Penal Code §403, as construed by the California Supreme Court in *In re Kay*, 1 Cal.3d at 943, punishes speech that "substantially impairs a public meeting other than a religious meeting (Penal Code §302) or a meeting under Election Code §18340." Section 18340 only punishes "threats, intimidations or unlawful violence" willfully done to "hinder or prevent[]" electors from gathering in a public meeting. This is a far higher threshold for criminalization of speech than the "substantial impair[ment]" standard imposed by *In re Kay*. Limiting disruptive "political" speech to a narrow application of Election Code §18340, when only "electors" are present, would produce an impermissible content-based distinction among core political speech categories, violating both the First and Fourteenth Amendments.

"A law 'is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content or it differentiates based on the content of speech on its face." *Center for Bio-Ethical Reform*, 533 F.3d at 787, citing *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 793 (9th Cir. 2006). With its express exceptions for religious meetings in a tax-exempt building and assemblies of "electors," Penal Code §403 differentiates based on the content of speech on its face.

Simply put, "[c]ontent-based regulations are presumptively invalid." *RA.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (citations omitted).   Although the government has some authority to distinguish between different categories of commercial speech based on its relative value, it "does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests." *Metromedia v. City of San Diego*, 453 U.S. 490, 514 (1981). *See also National Advertising Co. v. City of Orange*, 861 F.2d 246, 247 (9th Cir. 1988) (exemptions for certain types of signs were impermissible

5

content-based differentiations among classes of noncommercial speech).

To justify a content-based exclusion, the government "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. ... Also, a content-based regulation of constitutionally protected speech must use the least restrictive means to further the articulated interest." *Foti v. City of Menlo Park*, 146 F.3d 629, 635-36 (9th Cir. 1997). *See also, ACLU v. Reno*, 521 U.S. 844, 876-77 (1997) (same). In this instance, while the government might advance a compelling interest in protecting the solemnity of religious gatherings,[3/] there is no comparable interest in the atmosphere of a public political gathering to justify differentiating between general political speech and elector-related political speech. To hold otherwise would produce inconsistent and constitutionally intolerable results.

This is especially so when public officials are organizing an event on the public sidewalks. The First Amendment does not protect anyone's "right to be free from vigorous debate." *Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U.S. 1, 14 (1986) (plurality opinion). Indeed, the Amendment was adopted to ensure that debate on political matters would be robust, forceful, and contested. *Whitney* v. *California*, 274 U.S. 357, 377 (1939) (Brandeis, J., concurring). As the Court recently reiterated in *Citizens United:* "[M]ore speech, not less, is the governing rule." 558 U.S. ___, 130 S. Ct. 876, 911 (2010).

---

3. Under modern First Amendment jurisprudence, the exemption for religious meetings would also be unconstitutional as it protects assemblies based not only on the content of the gathering, but on the tax-exempt status of the bricks-and-mortar structure in which it takes place. The First Amendment has long moved away from finding protection for religious expression based on the existence of a church building or other similar distinctions. *Larson v. Valente*, 456 U.S. 228, 244 (1982). Applying the plain language of the statute, a newly formed church meeting in a space in a strip mall or in someone's home for Bible study would not warrant the same level of protection against disruption.

6

No place is this cardinal principle more true than in those quintessential public fora – streets and sidewalks – that from "[t]ime out of mind" have been used for public assembly and debate. *Hague v. CIO*, 307 U.S. 496, 515 (1939). As Justice O'Connor underscored in *Frisby v. Schultz*, 487 U.S. 474, 480-481 (1988), citing *Hague*, 307 U.S. at 515, this is no "accidental invocation[] of a 'cliche,' but recognition that '[w]herever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public."

When content-based regulations contain heightened protection for certain expressive activity, the justification for the restriction on speech is necessarily called into question. Without hesitation, "California and federal courts have invalidated content-based rules as unconstitutional when the rules contain exceptions, and those exceptions implicate the same interests that motivate the restriction on the regulated content." *Glendale Associates, Ltd. v. N.L.R.B.,* 347 F.3d 1145, 1157 (9th Cir. 2003) (citing *Gilleo v. City of Ladue,* 512 U.S. 43, 52 (1994)). Unquestionably, when "exceptions to the restriction on speech are based on content, the restriction itself is based on content." *Foti,* 146 F.3d at 636; *National Advertising Co. v. City of Orange,* 861 F.2d 246, 249 (9th Cir. 1988).

In *R.A.V.*, the Supreme Court found an ordinance (construed by the state's highest court to save it from unconstitutionality) proscribing "fighting words" that insult, or provoke violence, "on the basis of race, color, creed, religion or gender" facially unconstitutional. 505 U.S. at 391. Writing for a unanimous Court on this point, Justice Scalia opined that even within unprotected categories of speech, such as fighting words, content based distinctions – criminalizing only words that offend based on race, color, creed, etc.— are impermissible. *Id.*

For the same reasons, criminalizing certain political speech that disrupts "public meetings," but not other political speech unless and until it rises to the level of threats, intimidations, or violence establishes an impermissible content-based regulation. For

1  this reason, alone, Section 403 should be declared unconstitutional and enjoined.[4]

### 2. Penal Code §403 violates equal protection guarantees

Two years after the decision in *In Re Kay*, the United States Supreme Court decided *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972), adopting as the majority view the concurring opinion of Justice Black in the earlier case of *Cox v. Louisiana*, 379 U.S. 536, 581 (1965) (ordinance distinguishing between labor and other picketing). *Mosley* held that an ordinance based on distinctions between types of peaceful picketing violated the First and Fourteenth Amendments. 408 U.S. at 95.

Recognizing that "the equal protection claim in [Mosley was] closely intertwined with First Amendment interests," the Court held that Chicago had regulated expressive activity (picketing) on the basis of subject matter. *Id. Carey v. Brown,* 447 U.S. 455, 471 (1980) repeated the instruction of *Mosley*, striking down another ordinance proscribing peaceful picket of residences while excepting from its ban "picketing of a place of employment involved in a labor dispute." The ordinance was held unconstitutional as a content-based discrimination under the First and Fourteenth Amendments. "The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter." *Carey,* 477 U.S. at

---

4. "It is not up to the city or its officials to determine those issues worth debating in a public forum. In the field of expression all ideas are considered equal. 'Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say.'" *Olivieri v. Ward*, 801 F.2d 602, 606 (2d Cir. 1986) (citing *Mosley*, 408 U.S. at 96). *Olivieri* involved gay rights activists who were banned from protesting in front of St. Patrick's Cathedral in New York during the annual St. Patrick's Day Parade. "There is a strong First Amendment interest in protecting the right of citizens to gather in traditional public forum locations that are critical to the content of their message, just as there is a strong interest in protecting speakers seeking to reach a particular audience." *Galvin v. Hay*, 361 F.3d 1134, 1146 (9th Cir. 2004).

462-63. "Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). Similarly, in *A.C.L.U. of Nevada,* 466 F.3d at 800, the court invalidated an ordinance "banning vending, tabling, and leafleting" while exempting "labor-related activities." In each of these cases, the exemption for a particular category of speech was fatal to the statute.

The same is true here. Section 403 impermissibly exempts disruptions of public meetings related to an assembly of electors, raising the bar before a speaker may be subject to criminal sanctions. As in *Carey, Mosley,* and *A.C.L.U. of Nevada,* §403 describes exceptions to the rule in terms of subject matter (i.e. religious and political; electors political speech and some other category of political speech). So, to ascertain whether "disruptive" speech at a public meeting may be punished, officials first have to determine the subject matter of the public meeting: i.e., whether it was "political in nature" or related to "electors" assembled for "consideration of public questions." EC §18340. Necessarily, this will produce arbitrary enforcement results.

For example, under a narrow construction of the term "political meeting," limiting it to Election Code §18340, to prosecute individuals who disrupt a speech about abortion made to potential "electors" by a candidate for electoral office would require a showing of "threats, intimidations, or unlawful violence." Disruption of a speech on the same topic given by someone from Planned Parenthood to an audience of the organization's supporters, or a group of 17 year olds, would permit arrests for "substantial disruption" based on violations of "customs and usage."

Similarly, prosecution for disruption of a speech on immigration reform related to a pending ballot initiative such as Arizona's recent measure, SB 1070, would require a showing of "threats, intimidations, or unlawful violence," while disruption of a speech advocating similar reforms divorced from a pending initiative would only require "substantial" disruption. Moreover, if the audience is composed largely of individuals who are ineligible to vote because they are not citizens, but nonetheless

9

1   deeply interested in the issue of immigration reform because of its impact on their
2   American citizen children, the protest speech is automatically entitled to less
3   protection than would be given to an audience of "electors."   There can be no
4   principled distinction for this differential treatment based on the identity or subject of
5   the speaker.

6          **B.**       **Defendants' Speech Is Not Criminalized by Penal Code § 403**

7         The reason that §403 exempts political speech is obvious.  Disruptive behavior,
8   including "[t]he heckling and harassment of public officials and other public speakers
9   while making public speeches is as old as American and British politics at political
10  events."  *In re Kay*, 1 Cal.3d at 940.  The prosecution of such speech in political
11  forums undermines the goals of the First Amendment and chills public debate and
12  expressions of dissent Id. at 939. So, even assuming for the sake of argument that
13  §403 is not unconstitutionally vague or does not violate Equal Protection guarantees,
14  as *Kay* expressly emphasized, hecklers enjoy First Amendment protection, particularly
15  when the speech involves "public men" addressing a "public gathering," as here.  1 Cal.3d.
16  at 936 n.3.  The fact is that public officials "must be prepared to withstand at such times
17  the protest and controversy which their earlier actions and statements have generated." *Id.*

18        In that regard, "heckling, interrupting, harsh questioning, and booing, even though
19  they may be impolite and discourteous, can nonetheless advance the goals of the First
20  Amendment."  *Id.* at 939.  *See also Cox*, 379 U.S. at 546 (cheering and shouting
21  protected by the First Amendment).  "The right to free expression articulated through
22  'disturbances' that are no more than announced differences in ideology or beliefs lies at the
23  heart of the First Amendment; governmental prohibition of such activity under any statutory
24  scheme, could not constitutionally be countenanced.", *In re Kay*, 1 Cal.3d at 941-42.

25         **C.**      **Penal Code §403 is An Unconstitutionally Vague Criminal Statute that Directly Affects Core Political Speech**
26        Penal Code § 403 is unconstitutional not only because it is content-based
27  without a mitigating compelling interest, but also because it is fatally vague.  The
28  vagueness of a content-based regulation "raises special First Amendment concerns
    because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. at 871-

872. Where First Amendment rights are implicated, "[p]recision of regulation must be the touchstone." *NAACP v. Button*, 371 U.S. at 482.

A criminal law violates due process guarantees against vague law that trap the unsuspecting, if the statute either "(1) fails to give a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited;' (2) 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application;' or (3) 'abut(s) upon sensitive areas of basic First Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms.'" *Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). *See also Kolender*, 461 U.S. at 357-58. Where a statute reaches a substantial amount of constitutionally protected behavior, it need not be vague in all its applications before it is struck down. *Id.* at 359 n.8. Importantly, "where criminal sanctions are involved and/or the law implicates First Amendment rights such as here, a 'more demanding' standard of scrutiny applies." *Hunt*, 638 F.3d at 712.

### 1. Section 403 leaves an ordinary person of common intelligence uncertain as to the prohibited conduct.

A statute fails to meet due process requirements when it leaves an ordinary person of common intelligence uncertain as to the conduct it prohibits. *Kolender*, 461 U.S. at 357; *Hunt*, 638 F.3d at 711. Section 403's vagueness must be determined in light of any narrowing construction by the California state courts. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997).

In *Kolender*, the Supreme Court held that a statute requiring an individual to present "credible and reliable" identification was unconstitutionally vague because the statute failed to provide standards to determine when a suspect had satisfied the undefined identification requirement. *Kolender*, 461 U.S. at 359-362. Similarly, in *Hunt*, the Ninth Circuit held that Los Angeles' 2004 anti-peddling ordinance was vague because it failed to define or provide any examples of the merchandise that individuals were allowed to sell, setting a trap for the innocent. 638 F.3d at 711.

In the history of Penal Code §403, the statute has been construed only once to narrow it on overbreadth grounds. Recognizing that the plain language of §403 would sweep within its ambit a broad array of protected expressive activity, the California Supreme Court limited Section 403 to apply only when a defendant "substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." *In Re Kay*, 1 Cal. 3d at 943. Nearly a century ago, in *Farraher v. Superior Court of Kern County*, the statute was limited to meetings or assemblies of a public character because "the title or head-note of the section must be deemed a part of the substance of the enactment and accorded the same effect as though written into the body of the law." 45 Cal. App. 4, 6 (1919).

Believing its ruling on overbreadth was sufficient to resolve constitutional flaws in the statute because it permitted the Court to reverse the convictions of Kay and the others, the California high court did not reach the vagueness challenge. *In re Kay*, 1 Cal.3d at 945. Despite the narrowing constructions made three decades ago, Section 403 is unconstitutionally vague. None of its terms - either in §403 or any of the statutory exemptions - are defined. It is not clear what constitutes a "political" meeting warranting greater protection for speech. Must everyone present be an "elector?" And how is a person supposed to know the status of the audience before s/he engages in expressive activity that might subject them to criminal penalties? If a person guesses wrong, they go to jail.

The title of Section 403, which is deemed part of the substance of the enactment, provides that Section 403 applies to a disturbance of a public meeting or assembly "other than religious or political." Cal. Pen. Code § 403. The text of Section 403 excludes meetings or assemblies "referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code." From the statute's text, legislative history, and subsequent interpretation, a person of ordinary intelligence cannot decipher whether political meetings, as referenced in the title of Section 403 and Section 18340 of the

Elections Code, are conterminous or whether political meetings referenced in the title of the statute intends a separate, broader exception.   Both statutes deal with disturbance of public meetings.[5]   A person of ordinary intelligence could reasonably believe that political meetings encompasses a broader exception since nothing in the two appellate decisions, §403 or EC §18340 defines that constitutes a political meeting.   Section 18340 refers only to electors assembled at public meetings to address public issues and clearly the ordinary meaning of the term "political" is not so limited.

It is black letter law that, "except when otherwise clearly intended or indicated, words in a statute should be given their ordinary meaning[.]" *County of Los Angeles v. Frisbie*, 19 Cal.2d 634, 642 (1942).   Since the word "political" does not usually refer narrowly to electors at public meetings, construing the term in such a cramped manner in §403 produces an awkward construction not obvious from the plain meanings of the word or any legislative intent."   To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.   If the language is clear and unambiguous, the court's inquiry ends; there is no need for judicial construction.

Election Code §18340 makes it a misdemeanor to "willfully hinder[] or prevent[] electors from assembling in public meetings for the consideration of public questions" by "threats, intimidations, or unlawful violence."   Even if the political meeting exception referenced in the title of §403 is limited to EC §18340, then 403 is still unconstitutionally vague.   First, both §403 and the §18340 apply to public meetings, which is itself a broad, undefined term.   *See SEIU, Local 5 v. City of*

---

5. Penal Code §403:

"Disturbance of Public Meetings. Every person who, by threats, intimidations, or unlawful violence, willfully hinders or prevents electors from assembling in public meetings for the consideration of public questions is guilty of a misdemeanor."

13

*Houston*, 595 F.3d 588, 605 (5th Cir. 2010) (holding that the undefined term "public gathering" could not be enforced since it was unconstitutionally vague).

Second, because "public meeting" is undefined, the only major difference between a public meeting governed by 403 and public meeting governed by E.C. §18340 is that §18340 applies to public meetings for the consideration of "public questions."[6] However, both Section 403 and the E.C. Section 18340 fail to define or provide any examples of what constitutes "public questions." Cal. Pen. Code § 403; Cal. Elec. Code § 18340. "Public questions" is a vague term that generally encompasses the same meaning as "matters of public concern" from the defamation context. *See, e.g.*, *Sullivan v. City of Augusta*, 511 F.3d 16, 46 (1st Cir. 2007) (using the terms "public questions" and "matters of public concern" interchangeably). Recently, in *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011), the Supreme Court noted that speech is a matter of public concern when "it can be fairly considered as relating to any matter of political, social, or other concern to the community." With such a broad definition, a person of ordinary intelligence will not be able to dateRaine when a meeting is for the consideration of "public questions" because "public questions" can mean different things to different people.

Nor does the statute provide examples of what constitutes a "public meeting" or "public questions" that would allow a person to compare his or her conduct to the examples. *See Hunt*, 638 F.3d at 711 (ordinance is unconstitutionally vague where "no limiting examples to illustrate when an individual's sale of merchandise falls within these definitions.") In sum, §403 lacks any definitions or standards that would

---

6.   The other difference is that EC §18340 applies to meeting of electors, defined as "any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election." Cal. Elec. Code § 18340; Cal. Elec. Code § 321.

14

allow a person of ordinary intelligence to determine whether his or her conduct is governed by Penal Code §403 or E.C. §18340.[2/]

## 2. Section 403 also impermissibly delegates basic policy matters

Section 403 is unconstitutionally vague because it also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Hunt*, 638 F.3d at 712; *see also Kolender*, 461 U.S. at 357-358 (1983). Permitting subjective determinations renders the statute unconstitutionally vague. *Id.*

In *Kolender,* the statute that required an individual to present "credible and reliable" identification was void for vagueness because the statute vested discretion in the hands of police officers to determine whether the suspect had satisfied the statute. *Kolender*, 461 U.S. at 357-358 (1983). Here, Section 403 permits police officers to apply §403 in an arbitrary and discriminatory manner since key terms are undefined. Without standards, a police officer is allowed to make a subjective determination of whether a meeting or assembly is a public meeting and whether the

---

[2]   Election Code §18340 addresses "public meetings" of electors.   It does not regulate speech at polling places during voting.   A more specific provision of the Election Code sets criminal penalties for expressive activity at polling places.
     *See* California Election Code § 18541. Prohibited activities within 100 feet of polling place; Punishment for violation
        (a)   No person shall, with the intent of dissuading another person from voting, within 100 feet of a polling place, do any of the following:
            (1)   Solicit a vote or speak to a voter on the subject of marking his or her ballot.
            (2)   Place a sign relating to voters' qualifications or speak to a voter on the subject of his or her qualifications except as provided in Section 14240.
            (3)   Photograph, video record, or otherwise record a voter entering or exiting a polling place.
        (b)   Any violation of this section is punishable by imprisonment in a county jail for not more than 12 months, or in the state prison. Any person who conspires to violate this section is guilty of a felony.

15

public meeting is for the consideration of public questions. For example, an issue that may be a public question to one officer because the issue is a concern to that officer's community may not be a public question to a different police officer because that officer's community does not have the same concern. Because Section 403 impermissibly delegates broad discretion to police officers, Section 403 is unconstitutionally vague.

### 3.   Section 403 abuts upon sensitive areas of basic First Amendment freedoms, operating to inhibit the exercise of those freedoms.

Section 403 involves core expressive rights, inhibiting their exercise by creating the very real prospect that individuals will be arrested for lawful protest or counter-protest activity. In *Hunt*, the Ninth Circuit recently held that a city ordinance's lack of clarity on which items people could legally vend on the Venice Boardwalk "inhabited] the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished." *Id.* at 713.

In a similar manner, Section 403 abuts upon the long tradition of counter-protests protected by the First Amendment. *See Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006) (discussing the right to oppose a procession); *Mahoney v. Babbitt*, 105 F.3d 1452, 1459 (D.C. Cir. 1997) ("If the free speech clause of the First Amendment does not protect the right of citizens to 'interject' their own convictions and beliefs into a public event on a public forum then it is difficult to understand why the Framers bothered including it all.") Section 403 fails to provide sufficient guidance to permit individuals to know whether they are engaged in protected First Amendment activity or prohibited expression under Section 403. In the face of this ambiguity, individuals may choose not to exercise their rights for fear of being criminally punished. As a result, Section 403 is unconstitutionally vague as it inhibits the exercise of freedom of expression.

16

## IV.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

"The requirements for the issuance of a permanent injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1495 (9th Cir. 1996). As discussed below, plaintiffs readily meet this standard. The "irreparable" injury from the loss of First Amendment freedoms is clear. No monetary compensation can adequately compensate plaintiffs for the loss of free speech rights.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 129 S.Ct. 365, 374 (2009). *Accord, United States v. Arizona*, 2011 U.S. App. LEXIS 7413, *3 (9th Cir. 2011) (enjoining portions of Arizona SB 1070 as preempted by federal immigration law). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1199-1200 (9th Cir. 2009).

### A.   Plaintiffs Have Shown a Likelihood of Prevailing on the Merits

For the reasons set forth above, plaintiffs have shown a strong likelihood of prevailing on the merits of their claims under the First Amendment and the analogous provisions of the California Constitution. Plaintiffs have a fundamental right to engage in expressive activity in a quintessential public forum, even if it makes the public officials leading the Skid Row tour uncomfortable. The combined power of plaintiffs' voices may drown out the police and prosecutors proclaiming the ills of Skid Row, but that does not make communication of their message unlawful.

### B.   Plaintiffs Are Likely to Suffer Irreparable Harm If the Injunction Does Not Issue

Where the harm caused by a defendant's acts results in a deprivation of a constitutional right, generally no further showing of injury is required: the loss of a constitutional right is, in itself, sufficient injury to justify issuance of an injunction.

17

*Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equal.*, 950 F.2d 1401, 1412 (9th Cir. 1991); *Gutierrez v. Municipal Ct.,* 838 F.2d 1031, 1045 (9th Cir. 1988), *vacated as moot,* 490 U.S. 1016; *Citicorp Servs., Inc. v Gillespie,* 712 F. Supp. 749, 753 (N.D. Cal. 1989). "[W]here a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). Here, at least one person has already been arrested and all of the plaintiffs face on ongoing and explicit threat of arrest.

**C.     Defendant Will Suffer No Harm If the Injunction Continues**

At the same time, there is no harm to the City that outweighs the harm to plaintiffs from the threat of arrest for doing nothing more than engaging in lawful core expression directed at public officials in a quintessential public forum. The City "may suffer an abstract form of harm whenever one of its acts is enjoined. To the extent that is true, however, it is not dispositive of the balance of harms analysis. If it were, then the rule requiring 'balance' of 'competing claims of injury,' *Winter*, 129 S. Ct. at 376, would be eviscerated." *Independent Living Center of So. Calif., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009).

**D.     An Injunction Is in the Public Interest**

As the Court noted in issuing the Temporary Restraining Order, the issuance of the injunction is in the public interest. *See Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").

**V.     THE BOND REQUIREMENT OF F.R.CIV.P. 65 SHOULD BE WAIVED**

Plaintiffs respectfully request that the requirement to post a bond be waived in this instance.   When there is no likelihood of harm to the party enjoined, the requirement to post a bond may be dispensed with entirely. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

18

## VI.   CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully submit that they have established that they are entitled to both a preliminary injunction, a declaration that Penal Code §403 is unconstitutional on its face, and a declaration that Plaintiffs' expressive activity is fully protected by the First Amendment and may not be the basis for an arrest.

Dated: August 22, 2011

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

/s/
By: CAROL A. SOBEL
Attorney for Plaintiffs

19

CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing document has

been made this day on the following individuals by U.S. Mail and/or email:

Laurie Rittenberg
Kimberly Ericksen
Asst. City Attorney
200 N. Main Street
City Hall East, 9th Floor
Los Angeles, CA 90012
e. laurie.rittenberg@lacity.org
e. kimberly.ericksen@lacity.org

Louis Verdugo
Office of the Attorney General
300 S. Spring Street
Los Angeles, CA 90013
(U.S. Mail only)

Dated: August 22, 2011

/s/
CAROL A. SOBEL