CARMEN A. TRUTANICH, City Attorney (SBN 86629x)
GARY G. GEUSS, Chief Assistant City Attorney (SBN 128022)
LAURIE RITTENBERG, Assistant City Attorney (SBN 106683)
KIMBERLY A. ERICKSON, Deputy City Attorney (SBN 213634)
ADENA M. HOPENSTAND, Deputy City Attorney (SBN 223857)
200 N. Main Street, City Hall East, Room 916
Los Angeles, CA 90012
Telephone (213) 473-6877
Facsimile (213) 473-6818
kimberly.erickson@lacity.org
adena.hopenstand@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CPR for SKID ROW, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF LOS ANGELES<br><br>　　　　　　　　Defendant. | **Case No. LACV 11-6274 JFW (CWx)**<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND/OR DECLARATORY RELIEF**<br><br>Date:　October 3, 2011<br>Time:　1:30 p.m.<br>Ctrm:　16 (Hon. John F. Walter) |

Defendant City of Los Angeles ("City") hereby opposes the Motion for Preliminary Injunction and/or Declaratory Relief filed by Plaintiffs CPR for Skid Row, et al.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................... 2

A.   Monthly Community Meeting Walks Of Skid Row ................................ 2

B.   Plaintiffs White And LA CAN Engaged In A Pattern Of Systematic Harassment And Obstructive Conduct Aimed To Disrupt And Disband The Community Meeting Skid Row Walks ............................................................................................ 3

C.   White Is Arrested For His Harassing Behavior, *Not* For His Speech ..................... 5

III   ARGUMENT ............................................................................................ 5

A.   THE CALIFORNIA SUPREME COURT HAS FOUND PENAL CODE SECTION 403 A VALID REGULATION ..................................................... 5

1.   *In re Kay*, 1 Cal.3d 930 (1970) ............................................................. 6

B.   PENAL CODE SECTION 403 DOES NOT PROHIBIT SPEECH, BUT MERELY REGULATES THE TIME, PLACE AND MANNER OF THAT SPEECH .................. 7

1.   The Regulation Is Content-Neutral ........................................................ 8

a.   Plaintiffs' Assertion That Section 403 Regulates "Political" Is Unsupported . 10

2.   Section 403 Is Narrowly Tailored ......................................................... 12

3.   Section 403 Allows Adequate Alternative Channels of Expression To Reach Its Audience ...................................................................................... 13

C.   SECTION 403 DOES NOT VIOLATE THE EQUAL  PROTECTION CLAUSE 14

D.   PLAINTIFFS' VAGUENESS ARGUMENT MUST FAIL ................................. 16

1.   Plaintiffs Cannot Meet Special Standing Requirements ......................... 16

2.   Section 403 Does Not Violate Due Process Guarantees ......................... 16

a.   Section 403 Defines The Criminal Offense With Sufficient Definiteness ... 17

b.   Section 403 Does Not Impermissibly Delegate Basic ............................ 17
Policy Matters ................................................................................... 17

c.   Section 403 Does Not Abut Upon Basic First Amendment Freedoms ........... 18

i

E.    PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION MUST FAIL ..19

   1.    Preliminary Injunction Standard ...........................................................19

   2.    Plaintiffs Lack Standing To Seek Injunctive Relief ............................19

   3.    Plaintiffs Are Not Likely To Succeed On The Merits ........................22

   4.    Plaintiffs Are Not Likely To Suffer Irreparable Harm In The Absence Of
Preliminary Relief ..............................................................................23

   5.    The Balance Of Equities Does Not Tip In Plaintiffs' Favor ...............24

   6.    A Preliminary Injunction Is Not In The Public Interest.......................24

**IV.    CONCLUSION** ...........................................................................................25

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*A.C.L.U of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006) ...........................9

4

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)............................................ 12-13

5

*Boos* v. *Barry*, 485 U.S. 312 (1988) ...................................................................................9

6

*Center for Bio-Ethical Reform v. Baca*, 533 F.3d 780 (9th Cir. 2008) ...........................11

7

*Carey v. Brown*, 447 U.S. 455 (1980). ...............................................................................15

8

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979) ....................................23

9

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................19

10

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984)) ....................................8

11

*Collins v. Harker Heights*, 503 U.S. 115 (1992). ............................................................23

12

*Frisby v. Schultz*, 487 U.S. 474 (1988) ........................................................................ 12-13

13

*Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002) ..................................................23

14

*Galvin v. Hay*, 374 F.3d 739 (9th Cir. 2004) ...................................................................12

15

*Grayned* v. *City of Rockford*, 408 U.S. 104 (1972) .......................................................5, 11

16

*Heffron v. Intl. Soc. of Krishna Consciousness, Inc.* 452 U.S. 640, 650 (1981) ..............13

17

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982) ..........................5, 17

18

*Hunt v. City of L.A.*, 638 F.3d 703 (9th Cir. 2011) ..................................................... 16-18

19

*Kev. Inc. v. Kitsap County*, 793 F.2d 1053 (9th Cir. 1986) ...............................................9

20

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)........................................12

21

*Kolender v. Lawson*, 461 U.S. 352 (1983)...................................................................5, 17

22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ..............................................19

23

*Madsen v. Women's Health Center*, 512 U.S. 753, 763 (1994) ....................................9, 13

24

*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)..................................23

25

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................................21

26

*Police Department of Chicago v. Mosley*, 408 U.S 92 (1972) .........................................14

27

*Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc*, 859 F.2d 681

28

    (9th Cir. 1988) ............................................................................................................11

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ....................................................9

*Turner Broadcasting System, Inc., et al., v. Federal Communications Commission et al.*, 512 U.S. 622 (1994) ...........................................................................10

*United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973)..................................................................................19

*Wainright v. Stone*, 414 U.S. 21, 22-23 (1973) .............................................16

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001)..............................20

*Ward* v. *Rock Against Racism*, 491 U.S. at 791................................. 8-9, 12

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ...........................19


**California Cases**

*Blair v. Pitchess*, 5 Cal.3d 258 (1971) ....................................................6

*In re Edgar M.*, 14 Cal. 3d 727 (1975) ....................................................6

*In re Kay*, 1 Cal. 3d 930 (1970) ....................................................*passim*

*McMahonv. Albany Unified School District*, 104 Cal. App. 4th 1275 (2002) .................18

*Metromedia, Inc. v. City of San Diego*, 32 Cal.3d 180 (1982) ...........................6

*Planned Parenthood v. Shasta-Diablo, Inc. v. Williams*, 10 Cal. 4th 1009 (1995)...........13


**Federal Statutes**

42 U.S.C. section 1983 ....................................................1, 2, 23


**California Statutes**

Cal. Elections Code §321....................................................8

Cal. Elections Code §18340....................................................8, 15, 17

Cal. Gov. Code §815.2....................................................23

Cal. Gov. Code §820.2....................................................23

iv

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Cal. Gov. Code §820.4 ...................................................................23

Cal. Gov. Code § 820.6 ..................................................................23

Cal. Pen. Code §302 ........................................................................8

Cal. Pen. Code §403 ...................................................................*passim*

Cal. Pen. Code §626.8 ....................................................................11


**Federal Rules**

Federal Rule of Civil Procedure 5.1 ...............................................22


**Constitutional Provisions**

Article III ................................................................................. 19-20

First Amendment ......................................................................*passim*

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

2        **MEMORANDUM OF POINTS AND AUTHORITIES**

3        **I.      INTRODUCTION**

4        For the last six years, the Central City East Association Business Improvement

5    District has coordinated and hosted monthly walks in the Skid Row area of Los Angeles.

6    These walks, informally known as the "Skid Row Walk" begin and end at the Midnight

7    Mission and are essentially a community meeting comprised of community members,

8    service providers, business owners, members of public agencies and any other concerned

9    individual.  On July 6, 2011, after escalating and systematic harassing behavior against

10   the Skid Row Walk participants by the Los Angeles Community Action Network's ("LA

11   CAN"), led by its co-director Plaintiff Peter White ("White"), the Los Angeles Police

12   Department ("LAPD") arrested White for violating California Penal Code section 403

13   ("section 403"), disturbance of a assembly or meeting other than religious or political.

14       LA CAN and Pete White harassed the Skid Row Walk group by interjecting

15   themselves within the walk attendees, crowding them off of the sidewalk and blowing

16   bullhorns, air horns and whistles into their faces.  These disruptive, belligerent actions

17   resulted in White's arrest under section 403 – and not anything White or LA CAN

18   members said.  Ironically, as illustrated in this case, it is the LA CAN members, not law

19   enforcement, who are violating rights to free speech and assembly, flouting the fact that

20   the walk attendees have free speech rights to be enjoyed on the public sidewalks as well.

21       With this backdrop, Plaintiffs CPR for SKID ROW ("CPR"), an unincorporated

22   association, Hamid Khan ("Khan"), and White (collectively, "Plaintiffs") bring the

23   instant lawsuit, a facial challenge to section 403, asserting two claims of relief: (1) that

24   section 403 is a content-based regulation that violates the free speech and equal

25   protection guarantees and (2) that section 403 is unconstitutionally vague.  Plaintiffs raise

26   these claims against Defendant City of Los Angeles ("Defendant" or "City") pursuant to

27   42 U.S.C. §1983 ("section 1983").

28       However, Plaintiffs premise their lawsuit and their moving papers on

1

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

misrepresentation of the law and facts at issue.  Plaintiffs' claim of section 403's unconstitutionality hinges on their misconstruing the statute to be a content-based regulation of speech.  They claim that the statute prohibits "political speech" despite their being no such prohibition in the plain language of the section (nor in the statutory references incorporated therein), nor in the purpose for the statute, which was articulated by the California Supreme Court in *In re Kay*, 1 Cal. 3d 930, 942 (1970).  Instead, section 403 is a permissible content-neutral time, place and manner regulation.  In this way, Plaintiffs' freedom of speech and equal protection analyses fail.  Additionally, Plaintiffs do not set forth, nor in any way even address the elements of a section 1983 claim against the City, and cannot prevail on this ground either.

As a result, Defendant City of Los Angeles respectfully requests that this Court deny Plaintiffs' motion for preliminary injunction and/or a declaratory relief.

## II.    STATEMENT OF FACTS

### A.    Monthly Community Meeting Walks Of Skid Row

Since 2005, the Central City East Association Business Improvement District has coordinated and hosted monthly walks in the Skid Row area of Los Angeles.  Declaration of Estela Lopez "Lopez Decl." ¶2.  These walks have come to be known as the "Skid Row Walk" ("Walk") and occur on the first Wednesday of every month, without fail, rain or shine.  Lopez Decl. ¶¶2&4.  The Walk begins and ends at the Midnight Mission, usually progressing one to two miles and lasting approximately an hour and a half.  Declaration of Lt. Shannon Paulson "Paulson Decl." ¶5.  This Walk is not a political demonstration or political march and, in fact, there is no political message being displayed or conveyed.  Lopez Decl. ¶4.  These walks are essentially a community meeting comprised of community members, service providers, business owners, members of public agencies and any other concerned individual.  Paulson Decl. ¶3.

The purpose of the monthly walks is to promote collaboration among public and private stakeholders to communicate shared concerns and issues and engage in community problem solving.  Paulson Decl. ¶¶2-3.  It also serves as an enlightening tool

for politicians and members of public service entities to the issues that exist in the Skid Row environment. *Id.*  Essentially, the goal of the Skid Row Walk is to improve the Skid Row community and environment and to promote volunteerism amongst residents from outside of Skid Row.  Lopez Decl. ¶2.  These walks are open to any individual or group to attend, if they are interested in engaging in respectful dialogue and conversation with other concerned individuals.  Paulson Decl. ¶3.

**B.**     **Plaintiffs White And LA CAN Engaged In A Pattern Of Systematic Harassment And Obstructive Conduct Aimed To Disrupt And Disband The Community Meeting Skid Row Walks**

For seven months, from March 2011 to September 2011, the monthly Skid Row Walks have been disrupted by members of LA CAN, of which White is the co-director. (Plaintiffs' Memorandum of Points and Authorities, Exhibit A).  For the four months up until White's arrest on July 6, 2011, the LA CAN members repeatedly and systematically obstructed the ability of the Skid Row Walk participants to hold their meetings on the public sidewalks of Skid Row.  Lopez Decl. ¶12.   For the past seven months, the LA CAN members have continued to thwart any communication among the Walk attendees while participating in the Walk.  Lopez Decl. ¶¶15-17.  They accomplished this by following the Walk attendees throughout the route and using loud noise, harassment and intimidation in order to terminate the meeting.  Lopez Decl. ¶¶7-8, 10-11.  The LA CAN members engage in repeated harassment of the Walk attendees by interjecting themselves within the group of Walk attendees, crowding them off of the sidewalk and blowing bullhorns, air horns and whistles into their faces.  Paulson Decl. ¶¶ 7-8, 10-11).  This is all done with the intent of disrupting the Walk and preventing the Walk attendees from engaging in meaningful dialogue and communication themselves.  *Id.* As a result, month after month, the Walk attendees have ended the walk early and sought shelter away from the obnoxious noise that the LA CAN members inflict upon them.  Lopez Decl. ¶12.

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

The repeated actions of the LA CAN members during each of these Walks have prevented any exchange of meaningful dialogue among the Walk attendees.  Lopez Decl. ¶18.  In fact, many members feel afraid and intimidated to participate in the Walk.  *Id.*  On an average month, there were approximately twenty-five people who attended the Walk, however, the number has now dwindled to ten due to the actions of LA CAN.  *Id.*  For the past five months the goal of the Walk to provide meaningful discourse on the problems facing the homeless population in Skid Row has been thwarted by the deliberate actions of LA CAN. *Id.*  In addition, the LA CAN members' actions of blowing these amplified noise devices into the faces of the Walk attendees have resulted in injuries to the Walk attendees.  Lopez Decl. ¶11.

Plaintiffs inaccurately claim that White and his LA CAN group are doing nothing more than protesting and chanting from the sidewalk.  Mtn. 2:19-21.  This is a misrepresentation of the facts, as can be seen in Exhibits 1-4 and the Declarations of Lieutenant Paulson and Estela Lopez.  Mr. White and his group are not innocently attempting to exercise their constitutional rights.  Instead, these members' actions show that they believe they are the only people who have rights.  Chants such as "these aren't your streets!" and "we don't want you here!" all show the intent of the LA CAN protesters, to bring an end to the Skid Row Walks and keep the Walk attendees from exercising their Free Speech rights on the public streets of Skid Row.  Lopez Decl. ¶¶5-6.  If LA CAN would only protest, as Plaintiffs' facts suggest, there would be no problem.  In fact, Lieutenant Paulson has repeatedly assured LA CAN members that they can protest next to the Walk attendees, as long as they allow the attendees to speak amongst themselves and conduct their meeting and Walk without harassment.  Paulson Decl. ¶¶18&20.  Not only does LA CAN yell through bullhorns, set off air horns and whistles, but they purposefully seek out, stalk, follow, harass and intimidate the Walk attendees in an attempt at preventing the Skid Row Walk from occurring each month.  Paulson Decl. ¶19.  These LA CAN protesters have been given ample warnings and leeway by LAPD, which has resulted each month in an increased presence and increased noise making

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

devices by LA CAN protesters.  Paulson Decl. ¶4.  Each month, the LA CAN members become more menacing and deliberative in their attempt to drown out the Walk attendees voices.  *Id.*  It is the LA CAN members who are violating rights, ignoring the fact that the Walk attendees have Free Speech rights to be enjoyed on the public sidewalks as well. *Id.*

## C.   **White Is Arrested For His Harassing Behavior, *Not* For His Speech**

On July 6, 2011, after four months of aggressive, intimidating, harassing and assaultive actions by his organization, LA CAN, White continued this same behavior, preventing the Walk attendees from conducting their meeting on the streets of Skid Row.  Paulson Decl. ¶¶4,24-25.  On July 6, 2011, Lieutenant Paulson warned the LA CAN members, through its legal representatives, three times that any continued disruptions would end in arrest.  Paulson Decl. ¶25.  White flouted these warnings and continued to guide the LA CAN members into disrupting and disbanding the Walk meeting.  Paulson Decl. ¶24.  Finally, after four prior Walks and three warnings given on the day of arrest, Lieutenant Paulson arrested White under section 403, Disrupting a Lawful Public Meeting.  Paulson Decl. ¶25.

## III   ARGUMENT

## A.   <u>THE CALIFORNIA SUPREME COURT HAS FOUND PENAL CODE SECTION 403 A VALID REGULATION</u>

In evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court or enforcement agency has proffered. *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.5 (1982); *Grayned* v. *City of Rockford*, 408 U.S. 104, 110 (1972); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  It is the duty of the courts, wherever possible, to construe a statute in a manner which is reasonable, consistent with the statutory purpose, and eliminates doubts as to its constitutionality.  In examining the legislation for such a construction, the court should seek an interpretation which preserves as much of the constitutional provisions of the statute as possible, but which the legislative body would have intended to put into effect

5

had it foreseen the constitutional limitations.  *In re Edgar M.*, 14 Cal.3d 727, 736 (1975).  A court may not exercise its power so as to displace the fundamental legislative intent or what would amount to a rewriting of the statute.  *See Metromedia, Inc. v. City of San Diego*, 32 Cal.3d 180, 187 (1982); *Blair v. Pitchess*, 5 Cal.3d 258, 282 (1971).

### 1.    *In re Kay*, 1 Cal.3d 930 (1970)

In 1970, the California Supreme Court undertook an extensive analysis of section 403, interpreting the regulation to withstand a challenge under the First Amendment.  *See In Re Kay*, 1 Cal.3d at 942.  In *Kay*, a controversial congressman was invited to speak at a Fourth of July Day celebration in a local park.  *Id.* at 935-36.  During his speech to approximately 6,000 persons, a group of about 25 to 250 people began rhythmically clapping and shouting slogans for five to ten minutes, protesting the congressman's position on a grape boycott.  *Id.* at 936.  Despite the protest, the congressman finished his speech and the protesting did not affect the program.  *Id.*  Neither the congressman nor the police asked the protesters to be silent or leave.  Even though the protesters were not arrested, charges for violation of section 403 were filed two weeks later.  *Id.*

The *Kay* court acknowledged that section 403 had not been interpreted on First Amendment grounds since it had been passed a century earlier.  *Id.* at 938.  The challenge presented to the Court in *Kay* was to strike a balance of First Amendment freedoms between those who wish to peaceably assemble and those who wish to express their views publicly.  In writing for the majority, Justice Tobriner observed: "The Constitution does not require that any person, however lofty his motives, be permitted to obstruct the convention or continuation of a meeting without regard to the implicit customs and usage or explicit rules governing its conduct."  *Id.*

The *Kay* majority found section 403 constitutionally infirm on overbreadth grounds because the statute applied to everyone who willfully disturbs or breaks up a meeting.  *Id.*  The Court opined that, if there were no restrictions, then the statute could criminalize conduct that was nothing more than an expression of free speech.  *Id.*  The Court then interpreted section 403 so to save it from constitutional infirmity and held

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

"section 403 authorizes imposing criminal sanctions only when the defendant's activity itself — and *not* the content of the activity's expression — substantially impairs the effective conduct of a meeting." *Id.* at 942 (emphasis in original). In this way, *Kay* described section 403 as a <u>content-neutral</u> regulation. Furthermore, the *Kay* court interpreted section 403 to require a showing "that the defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." *Id.* at 942-943. Therefore, rather than ordaining a rigid standard to follow, the *Kay* majority made clear that the nature of the meeting in question "plays a major role" and section 403 "draws its content from the implicit customs and usages or explicit rules germane to a given meeting." *Id.* The *Kay* court further interpreted the statute to mean that when this standard of conduct, such as violating implicit customs or usages, lies in doubt, law enforcement officers or officials should request that defendants curtail their conduct prior to arrest or citation. *Id.* at 945. "If section 403 were not so interpreted, individuals would be forced to speculate as to what conduct might entail criminal sanctions and would 'necessarily…"steer far wider of the unlawful zone[.]"'" *Id.*

**B.**   <u>**PENAL CODE SECTION 403 DOES NOT PROHIBIT SPEECH, BUT MERELY REGULATES THE TIME, PLACE AND MANNER OF THAT SPEECH**</u>

Plaintiffs erroneously claim that section 403 is content-based, and is therefore subject to strict scrutiny. However, section 403 is not content-based, as Plaintiff contends, but is a <u>content-neutral</u> regulation subject to intermediate scrutiny under time, place and manner restrictions. The general test in determining whether a time, place and manner restriction is constitutional is whether it meets the following three requirements: 1) It does not refer to the content of the regulated speech (i.e., is "content-neutral"); 2) It is narrowly tailored to serve a significant government interest and; 3) It leaves open adequate alternative avenues of communication to express views. *See Ward v. Rock Against Racism*, 492 U.S.

7

781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

### 1.   The Regulation Is Content-Neutral

Section 403 prohibits the disturbance of meetings or assemblies not primarily concerned with religion or public elections.[1]  Notwithstanding that the California Supreme Court has already found section 403 to be content-neutral,[2] Plaintiffs erroneously argue that section 403 is a content-based statute; that is, the text of the statute itself regulates the speech, thus infringing on constitutionally protected First Amendment

---

[1] The text of section 403 reads: "Every person who, without the authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor."

A relevant excerpt of section 302 of the Penal Code provides:
> Every person who intentionally disturbs or disquiets any assemblage of people met for religious worship at a tax-exempt place of worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where the meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail for a period not exceeding one year, or by both that fine and imprisonment.

Cal. Pen. Code 302(a)

Section 18340 of the Elections Code states:  Every person who, by threats, intimidations, or unlawful violence, willfully hinders or prevents electors from assembling in public meetings for the consideration of public questions is guilty of a misdemeanor.

California Elections Code section 321 defines "elector" as "any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election."

[2] *See*, *supra*, Section III(A)(1) on page 7, lines 1-3.

---

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

freedoms.  A regulation is content-based if either the main purpose in enacting it was to suppress the content of speech, or to distinguish favored speech based on the ideas or views expressed.  *See A.C.L.U of Nevada v. City of Las Vegas*, 466 F.3d 784, 793 (9th Cir. 2006).

Section 403 is content-neutral because it criminalizes the conduct and manner through which the speech is delivered that causes the disturbance or disruption of a meeting and not on the actual message espoused or conveyed. The "principal inquiry in determining content-neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." *Ward* v. *Rock Against Racism*, 491 U.S. at 791.  In other words, to be content-neutral the government must adopt a regulation of speech "without reference to the content of the regulated speech." *Madsen v. Women's Health Center*, 512 U.S. 753, 763 (1994); *See also Ward,* 491 U.S. at 791.  "The government may not regulate [speech] based on hostility -- or favoritism -- towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992).  Case law requires a careful look at the government's purpose in adopting the regulation.  If a regulation "serves purposes unrelated to the content of expression," it will be deemed content-neutral, "even if it has an incidental effect on some speakers or messages but not others." *See Ward,* 491 U.S. at 791. Therefore, government regulation of expressive activity is "content neutral" as long as it is "*justified* without reference to the content of the regulated speech." *See Kev. Inc. v. Kitsap County*, 793 F.2d 1053, 1058 (9th Cir. 1986)(emphasis in original); *But see Boos* v. *Barry*, 485 U.S. 312, 320-321 (1988) (holding the provision prohibiting the display of any sign within 500 feet of a foreign embassy if the sign brought the foreign government into "public odium" or "public disrepute" to be content-based because who could picket in front of the embassy depended entirely on whether their picket signs were critical of the foreign government or not).  On their face, content-neutral regulations distinguish only on the basis of the manner in which messages are transmitted, not on the basis of the messages themselves. *See Turner Broadcasting System, Inc., et al., v.*

9

*Federal Communications Commission et al.*, 512 U.S. 622, 643 (1994).

Not only does the statutory language of section 403 so indicate, but commonsense also dictates that section 403 is nowhere close to content-based.  Section 403 *nowhere* limits speech based on content of the message, or the viewpoint that is being advanced.  Instead, it criminalizes the manner in which someone uses speech to disturb or disrupt a meeting and not on the basis of the messages themselves.  Plaintiffs attempt to read in a limitation of "political" speech into the statute that is just not there.  Other than through conclusory statements, Plaintiffs nowhere identify in section 403 what particular message or idea is being singled out and regulated.  Under section 403, no group or message is singled out for restriction on speech, instead the regulation focuses on and applies to the <u>conduct</u> of the person who breaks up or disturbs a meeting.  A literal reading of the statute presents no message or idea that is being singled out or prohibited.  This regulation applies to any meeting, regardless of the speech that is being conveyed by the speakers or the speech that is being communicated by the disrupters.

### a.   Plaintiffs' Assertion That Section 403 Regulates "Political" Is Unsupported

Plaintiffs argue that the statute regulates certain "political speech" because the statute exempts religious meetings and meetings that involve the assembly of electors. [3]  Plaintiffs try to classify and inject political speech into the statute; however, nowhere in section 403 does it prohibit any idea or message involving political speech.  This prohibition against disruption of meetings extends to all meetings, whatever their content,

_____

[3] Perhaps Plaintiffs are latching on to the word "political" in the title of the statute: "Disturbance of assembly or meeting other than religious or political;" but the reference to "political" in the title of section 403 has nothing to do with the content of speech, but rather refers to the Election Code references within section 403 relating to meetings of electors, and not to any alleged content of those meetings. In this way, Plaintiffs misconstrue section 403 as in any way restricting or differentiating "political speech" from other speech.

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

regardless of whether it is political or apolitical.[4]  The statute focuses on the conduct, not the speech.

Section 403 sets forth the criminal penalties imposed on a person who disrupts a meeting through one's actions, not through the speech that the person is espousing. Section 403 exempts the Election Code and code section regarding religious meetings so as not to conflict with the elements of those statutes referenced in Section 403.  Nowhere

———————————

[4] Nor does Plaintiffs' citation to *Center for Bio-Ethical Reform v. Baca*, 533 F.3d 780, 790 (9th Cir. 2008), an as-applied challenge to California Penal Code section 626.8, support Plaintiffs' claims that section 403 should be construed as impinging on "political speech."  In *Center for Bio-Ethical Reform*, anti-abortion activists were charged with violating a Penal Code section for disrupting classroom instruction after driving vehicles with graphic imagery around a middle school.  Here, the Ninth Circuit Court of Appeals concluded the activity (driving) was deemed disruptive only because of some boys' reaction to the images.  In this way, Ninth Circuit found that Penal Code section 626.8 was not properly applied in that case (the conduct at issue fell outside the prohibitions of the statute) so that the anti-abortion activists' free speech rights were violated.  The *Center for Bio-Ethical Reform* court found the application of the Penal Code section to be unlawful because, when the statute, "as read by the police officers on the scene, would allow or disallow speech depending on the reaction of the audience, then the ordinance would run afoul of an independent species of prohibitions on content-restrictive regulations." *Id.* at 787.  This case did not turn on the statutory comment that the Legislature did not contemplate this section to infringe on constitutionally protected speech, as Plaintiffs contend. (Mtn., page 4 n.2).  In any case, Ninth Circuit nowhere claimed that the absence of an expression of legislative intent (like that regarding Penal Code section 626.8) would mean that a statute, content-neutral on its face, would render it content-based. Nor do Plaintiffs point to any such authority.  Interestingly, the instant case is more akin to two cases cited in *Center for Bio-Ethical Reform* whereby the United States Supreme Court has upheld limitations on obstreperous conduct or manner of communication, rather than its content.  *See Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972) (In dealing with an anti-noise ordinance, the Supreme Court upheld the regulation of speech that would prevent classroom activities because of its high-decibel manner of communication, not its content.) and *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc*, 859 F.2d 681, 686-87 (9th Cir. 1988) (permitting enjoining conduct outside an abortion clinic if it is "in a volume that substantially interferes with the provision of medical services within the [clinic]."

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

in any of these latter statutes either is there any reference to a particular message or speech that is being regulated, let alone religious or "political speech."

Therefore, Section 403 does not prohibit either a particular viewpoint or any other subject matter that may be discussed by a speaker at a meeting.  Instead, it places a manner restriction on how a person conducts themselves at meetings: only after a person has willfully disturbed or broken up a meeting has that individual violated the statute. The statute applies equally to anyone who disturbs or breaks up the meeting, regardless of the viewpoints of anyone who is present at the meeting.

### 2. Section 403 Is Narrowly Tailored

A narrowly tailored time, place, or manner restriction on speech is one that does not burden substantially more speech than is necessary to achieve a substantial government interest.  *See Ward*, 491 U.S. at 799; *See also Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009).  It must "target and eliminate no more than the exact source of the 'evil' it seeks to remedy."  *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Furthermore, if the governmental interests would be achieved less effectively without the regulation, and the regulation achieves its ends without significantly restricting a substantial quantity of speech that does not create the same evils, the Supreme Court has found that the regulation is sufficiently narrowly tailored.  *See Ward*, 491 at 799 & n.7. Finally, although a regulation does not need to be minimally restrictive, a court will look to whether several obvious less-restrictive alternatives are available in deciding whether the regulation can achieve it purposes without burdening more speech than necessary. *See Galvin v. Hay*, 374 F.3d 739, 755 (9th Cir. 2004); *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009) (existence of numerous and obvious less-burdensome alternatives is relevant to assessing whether restriction on speech reasonably fits interest asserted.

Here, the government has a substantial interest in balancing First Amendment freedoms between the rights of protesters to speak out against a particular viewpoint, the speakers who have the right to express a viewpoint and the audience, who have the right

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

to hear that viewpoint.  As *Kay* articulated, the state "retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion.  Freedom of everyone to talk at once can destroy the right of anyone effectively to talk at all." *Kay*, 1 Cal. at 941.

Further, a state's interest in protecting the safety and convenience of persons using a public forum is a valid government objective.  *See Heffron v. Intl. Soc. of Krishna Consciousness, Inc.* 452 U.S. 640, 650 (1981); *See also Berger*, 569 F.3d at 1041-1043. It is clear that the government has an interest in protecting citizens who wish to gather and speak from having their liberties infringed upon by those who want to speak out and disrupt the meeting.  The government has an interest in allowing everyone the freedom to speak.  Therefore, no other less restrictive regulation than section 403 would allow both groups the freedoms to express their ideas at public meetings.  Those who wish to express discontent at the meeting can do so, however, if their actions escalate to substantial impairment to where others cannot participate in or conduct the meeting, the regulation is enforced.  The regulation allows both the speakers and those who wish to oppose them room to speak.  Those who protest have the power to limit their actions and still be heard before section 403 is enforced.

**3.  Section 403 Allows Adequate Alternative Channels of Expression To Reach Its Audience**

"A time, place, and manner restriction imposed on protected expression must leave open adequate alternative channels of expression that allows the message to reach its audience, i.e., the speaker's target audience must not be altogether insulated from the speaker's message." *Frisby*, 487 U.S. at 480. In *Planned Parenthood v. Shasta-Diablo, Inc. v. Williams*, 10 Cal. 4th 1009, 1020-1022 (1995), the court upheld a "buffer zone" as an adequate alternative avenue for protesters to convey their message by having the anti-abortion protesters across the street from the clinic.  The protesters were still able to convey their message since they could be seen and heard by their target audience, the clinic's patients. *See also Madsen*, 512 U.S. at 753 (1994). (striking down floating buffer

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

zone imposed as part of injunctive relief as not narrowly drawn on basis of record in case).

Section 403 allows a protest to occur, however, it also allows a speaker and audience to conduct a meeting.  Under the *Kay* standard, if the protest can be done in a way that does not substantially impair or break up the meeting, it can continue. Furthermore, if there is doubt as to whether the conduct is approaching a substantial impairment, the police should give a warning.  In fact, in this case, the LAPD repeatedly told the LA CAN members that they could continue to protest, but they could not be integrated within the Walk attendees and make such excessive noise that prevented Walk attendees from communicating with or hearing each other.  The adequate alternative avenue for the LA CAN group would be to protest near the Walk attendees, but not on top of them or in between them.  As is clear from Lt. Paulson's declaration, she did make this avenue available to the LA CAN members, however, they ignored and disregarded her proposal, while continuing to carry on with their aggressive noise making and disturbance of the Skid Row Walk.  (Paulson Decl. ¶18).  The continual warnings to LA CAN by the LAPD for four months prior to the arrest, went well over what the *Kay* court stated would suffice for notice.

**C.   SECTION 403 DOES NOT VIOLATE THE EQUAL  PROTECTION CLAUSE**

Plaintiffs premise their allegation that section 403 violates the Equal Protection Clause on fallacious reasoning—that section 403 is content-based. However, because, it is a content-neutral statute (as discussed *supra* in Section III(A)(1), pages 6-7), their equal protection claims fail.

Plaintiffs rely on *Police Department of Chicago v. Mosley*, 408 U.S 92 (1972) to support their contention that California Penal Code section 403 violates equal protection guarantees.  In *Mosley*, the regulation being challenged was a city ban on picketing near schools, which specifically permitted picketing for the publication of labor union views, but not for other sorts of peaceful picketing.  *See id.* at 94.  The Court held that Chicago's

1  picketing ordinance violated the Equal Protection Clause because the ordinance

2  differentiated between two kinds of picketing.  *See id.* at 95.  Addressing the plaintiff's

3  claim that this exception violated his equal protection rights, the Court found that "[t]he

4  central problem with Chicago's ordinance is that it describes permissible picketing in

5  terms of its subject matter." *Id.* at 95.  It "thus slips from the neutrality of time, place, and

6  circumstance into a concern about content. This is never permitted." *Id.* at 99 (footnote,

7  alteration, and internal quotation marks omitted).

8      In another case relied upon by Plaintiffs, the Supreme Court examined a general

9  prohibition of peaceful picketing that contained an exemption for picketing a place of

10  employment involved in a labor dispute.  *See Carey v. Brown*, 447 U.S. 455 (1980).  The

11  Court concluded that the statute violated the Equal Protection Clause because it

12  discriminated between lawful and unlawful conduct based on the content of the picketers'

13  messages. *Id.* at 471.  That discrimination was impermissible because it allowed

14  preferential treatment of expression concerning labor disputes, but prohibited discussion

15  of all other issues. *Id.* at 461.

16      Here, Plaintiffs contend that section 403 violates the Equal Protection Clause

17  because it "describes exceptions to the rule in terms of subject matter (i.e. religious and

18  political; electors political speech and some other category of political speech)" (Memo.

19  of Points and Authorities, page 9, lines 11-12). First of all, the regulation in this case is

20  completely distinguishable from the regulations that were invalidated in *Mosely* and

21  *Carey*.  The impermissible distinction of viewpoints in both *Mosely* and *Carey* was

22  inherent in the actual language of the statute.  The language of the challenged statutes

23  themselves, without reference to any other statute, discriminated between the subject

24  matter of two different groups.  In this case, however, Plaintiffs (mis)read section 403 in

25  conjunction with Elections Code section 18340 to conclude that section 403 affords

26  preferential treatment of one viewpoint over the other because of the mention of political

27  meetings (as defined in the latter code section).  However, Plaintiffs do not credibly argue

28  that the language in section 403, standing alone, nor in conjunction with its other

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

statutory references, restricts a particular idea or viewpoint.  Neither statute (section 403 nor Elections Code 18340) penalizes the speech (neither the viewpoint nor content) that is spoken at a meeting.

**D.   PLAINTIFFS' VAGUENESS ARGUMENT MUST FAIL**

In *Wainright v. Stone*, 414 U.S. 21, 22-23 (1973), the Court held that "[for] the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation 'we must take the statute as though it read precisely as the highest court of the State has interpreted it.'"  As previously discussed, the California Supreme Court established in *In re Kay* the requirement of "substantial impairment" in order to preserve the statute's constitutional integrity.  *Kay*, 1 Cal.3d at 942-943.

**1.    Plaintiffs Cannot Meet Special Standing Requirements**

Plaintiffs must meet special standing requirements to assert a vagueness claim in addition to establishing the Constitutional standing requirements of "1) a 'distinct and palpable' injury in fact (2) that is 'fairly traceable' to the challenged provision and (3) that would 'likely . . . be redressed' by a favorable decision for the plaintiff."  *Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011).  To meet this special standing requirement in raising a vagueness claim, "Plaintiff's conduct must not be 'clearly' prohibited by the ordinances at issue."  *Id.* at 710.  Here, Khan has no Constitutional standing because he cannot prove a "distinct and palpable" injury, as he has never been arrested under section 403.  Furthermore, Plaintiff Pete White cannot meet the special standing requirements for making a Due Process claim either because section 403 clearly prohibits White's conduct leading to his arrest.  Section 403 clearly states that disturbing or breaking up a meeting is prohibited, which is exactly what White did when he and his LA CAN group engaged in excessive noise with bullhorns, air horns and loud yelling to prevent the Walk attendees from having their public meeting.

**2.    Section 403 Does Not Violate Due Process Guarantees**

An ordinance may be void for vagueness because either it (1) fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited;" (2)

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1    "impermissibly delegates basic policy matters to policemen, judges, and juries for

2    resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and

3    discriminatory application;" or (3) "abut(s) upon sensitive areas of basic First

4    Amendment freedoms, operating to inhibit the exercise of (those) freedoms."  *Hunt*, 638

5    F.3d at 712 (2011).

6                    **a.    Section 403 Defines The Criminal Offense With**

7                          **Sufficient Definiteness**

8            "In general, the void-for-vagueness doctrine requires that a penal statute define the

9    criminal offense with sufficient definiteness that ordinary people can understand what

10   conduct is prohibited and in a manner that does not encourage arbitrary and

11   discriminatory enforcement." *See Kolender,* 461 U.S. at 357-358.  *See also*, *Hoffman*,

12   455 U.S. at 498. Here, Section 403's prohibitions are clearly defined, as an ordinary

13   person would know from the statute that their conduct, if elevated to the level of

14   disturbing or breaking up a meeting, would result in criminal charges.  Again, there are

15   no references to any particular speech within the statute, it is clear that the conduct that

16   causes the disturbance is what is prohibited.  Furthermore, there are cross-references in

17   section 403 to other statutes in order to define certain language in section 403 (describing

18   the meeting, not its content).  Plaintiffs give a convoluted and irrelevant analysis

19   regarding section 403 and Elections Code section 18340 to ostensibly support their

20   vagueness claim.  However, there is no language within section 403 that makes it unclear

21   and ambiguous.

22                    **b.    Section 403 Does Not Impermissibly Delegate Basic**

23                          **Policy Matters**

24            Plaintiffs cannot establish that section 403 is void under the vagueness

25   doctrine because the statute does not "impermissibly delegate[] basic policy matters to

26   policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the

27   attendant dangers of arbitrary and discriminatory application."  *Hunt*, 638 F.3d at 712.

28   Plaintiffs argue that section 403 has no standards, and therefore, police officers are

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

allowed to make a subjective determination as to whether one violated the statute. However, the standard in section 403 is clear, whether a defendant's conduct substantially impairs or breaks up a meeting.  In enforcing section 403, there is no "highly fact specific" analysis, like in *Hunt*, that a police officer or official would need to undertake in order to determine if a person was violating section 403.  The standard is very precise, either the meeting is still going or it is not.  If the defendant's conduct substantially impairs or breaks up the meeting, so that there is no longer a meeting, then an arrest can be made under section 403.  There is no subjective standard under section 403, because either the meeting has ended or it is still going. *See, e.g., McMahon v. Albany Unified School District*, 104 Cal. App. 4th 1275, 1288-89 (2002), (upholding section 403 arrest and finding no free speech violation after the plaintiff dumped trash at a school board meeting so as to substantially impair the meeting; the board was forced to not be able to proceed with the meeting as agendized because of the plaintiff's actions). Because the break up of a meeting is a delineated event, there is no subjective judgment left to the officer to determine if section 403 was violated.

### c.   Section 403 Does Not Abut Upon Basic First Amendment Freedoms

Whether a statute "abut(s) upon sensitive areas of basic First Amendment freedoms" means that lack of clarity may operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished.  *Hunt*, 638 F.3d at 713.  As previously discussed, despite Plaintiffs' attempts to interject speech into section 403, there is nothing in the plain language of the statute that would lead anyone to believe that they could not exercise their First Amendment rights by speaking freely at a public meeting.  Nothing in the statute states anything about the content of speech, there is no language in the statute that would lead a person to believe that if they spoke regarding a certain viewpoint or message, that they could be arrested under section 403.

---

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

E.   **PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION MUST FAIL**

    1.   **Preliminary Injunction Standard**

In order to seek a preliminary injunction, a party must establish four criteria.  Under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), a plaintiff seeking a preliminary injunction must establish that: (1) he/she is likely to succeed on the merits; (2) he/she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his/her favor; and (4) a preliminary injunction is in the public interest.  *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).  In addition, for a preliminary injunction to issue, a plaintiff must establish that he/she has standing to do so by demonstrating that the threat of injury feared "as a result of the challenged official conduct is both real and immediate, not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter*, *supra*, 555 U.S. at 20.

    2.   **Plaintiffs Lack Standing To Seek Injunctive Relief**

Standing under Article III of the Constitution requires a plaintiff to have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). To be "imminent," the plaintiff must show that the injury is "*certainly* impending." *Id*. at 564, n.2 (emphasis in original).  The purpose of this requirement is to avoid conferring standing on a party on which no injury would have occurred at all in the absence of judicial action. *Id*.  Standing "is not 'an ingenious academic exercise in the conceivable.'" *Id*. at 566 (*citing United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688 (1973)).  But "standing must be established independent of the lawsuit

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

filed by the plaintiff."  *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001).

Here, Plaintiffs do not meet the requirements for standing as their injury is not immediate, but hypothetical.  Plaintiffs seek injunctive relief based on their fear that they cannot express themselves by protesting at the Skid Row walks or else they will be arrested (Hamid Khan ("Khan Decl."), ¶5).  Similar claims were found by the Supreme Court in *Lyons*, *supra*, not to satisfy Article III's standing requirement.  The plaintiff in *Lyons* was stopped for a traffic violation by the LAPD.  During the stop, and allegedly without threat or provocation, Lyons was placed in a chokehold and rendered unconscious.  *Id*. at 97.  Lyons sued for damages and injunctive relief, and also moved successfully for a preliminary injunction to prevent the LAPD from allowing its officers to apply chokeholds in situations where deadly force is not threatened.  *Id*. at 99-100. That order was reversed by the Supreme Court.

The Supreme Court reversed on the ground that Lyons failed to establish standing to seek injunctive relief.  "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered….The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties." *Id*. at 104-105.  The Court noted that five months had passed since Lyons arrest and the filing of the complaint without any further "unfortunate encounters between Lyons and the police." *Id*. at 108.

"Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more assert that certain practices of law enforcement officers are unconstitutional. . . . If Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983." *Id*. at 111-113. Finally, "[p]ast exposure to illegal conduct" does not "in itself

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

show a present case or controversy regarding injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). In fact, despite White's arrest on July 6, 2011, Khan, who declares that he witnessed the arrest (*See* Khan Decl., ¶5), still felt safe to come out to the Skid Row Walk on August 3, 2011 and protest. One arrest of one individual in a five month period is not imminent harm.

Plaintiffs' Motion is based on similar speculative fear of future police encounters that may violate Plaintiffs' constitutional rights. Such speculation does not meet the standing requirements necessary to seek a preliminary injunction. Indeed, the declarations and exhibits proffered by Plaintiffs further undermine their standing. For four months prior to White's arrest, the LA CAN demonstrators engaged in the same behavior month after month, yet no arrests occurred. Their assaultive behavior increased month to month, from March to July 2011, yet no arrests were made until three warnings were given in one night and the arrest needed to be made in order to allow the Walk attendees to exercise their rights and hold their meeting on the public sidewalks. Paulson Decl. ¶25. There are no allegations that anyone from LA CAN, other than White, was ever arrested for harassing behavior. White was arrested on July 6, 2011 due to him preventing the Walk attendees from conducting their lawful meeting on the public streets. The same behavior for which White was arrested on July 6, 2011 was handled by warnings by LAPD to LA CAN during the prior months. Lt. Paulson went out of her way to continually warn the LA CAN disturbers that their actions were not legal and that the Walk attendees were entitled to the same First Amendment protections as the LA CAN members. It was abundantly made clear to LA CAN members that they could continue to protest, but it would have to be in a manner that would not interfere with the Walk attendees' First Amendment rights. It is only when White crossed the line from protesting and chanting to assaultive behavior and impairing when and where the Walk attendees could hold their meeting that the arrest was necessitated.

In fact, there are no allegations by Khan that anyone from LA CAN was arrested on the August 3, 2011 walk, even under a statute other than section 403. There is no

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

certainty that Khan would be arrested under section 403, as he has never been.  It is but speculative that chanting and protesting alone will result in an arrest, as it has not yet. Khan's declaration does not support Plaintiffs' fear that they face imminent arrest for doing no more than expressing themselves through "chanting" and "protesting" from the public as the Walk proceeded through Skid Row.  In fact, Lt. Paulson stated that on July 6, 2011, after the second warning to the demonstrators, LA CAN members stayed across the street from the Walk participants from where they yelled and chanted; yet, because they were not disrupting the meeting of the walk attendees, she allowed the protests to continue.  Paulson Decl. ¶23.  Therefore, it makes no sense for Plaintiffs to feel afraid that if they are just "chanting" and "protesting" they will be arrested.

As a result, Plaintiffs cannot support their claim that, by their protesting and chanting against the Skid Row Walk attendees, they are in imminent threat of arrest for exercising their First Amendment rights if no injunction is issued.  Plaintiffs have thus failed to demonstrate standing to seek any form of injunctive relief.

### 3. Plaintiffs Are Not Likely To Succeed On The Merits[5]

Plaintiffs' claim that Section 403 is content-based, yet, as detailed above, they offer no explanation as to what expressive activity or particular speech is being regulated under the statute.  Therefore, the statute is a content-neutral regulation that is subject to reasonable time, place and manner restrictions.

---

[5] Pursuant to Federal Rule of Civil Procedure 5.1, Plaintiffs must give notice of and a court must "certify" to the appropriate state attorney general, any constitutional challenge to a federal or state statute "affecting the public interest."  After being provided this notice, the state attorney general has 60 days in which to intervene and no final judgment may issue until expiration of this period.  As of the time of Defendant briefing this motion, this 60 day period has not yet expired.  Additionally, although counsel for Plaintiffs attaches correspondence to the Office of the Attorney General to her declaration, there appears to be a potential defect in this notice: the first paragraph of this correspondence identifies California Penal Code section 402 (not 403) as the challenged statute. To the extent notice was given later (by supplying the moving papers of this motion), the time for the Attorney General to intervene is further extended.

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Further, Plaintiffs have made no showing regarding their section 1983 claims to show a likelihood of success on the merits.  Indeed, there are no allegations in the Complaint, nor any briefing in their moving papers, to support an actionable section 1983 claim against the City.  Section 1983 creates no statutory rights in and of itself, but is merely an enforcement vehicle for federally-secured rights derived from other sources.  *See Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 617 (1979).  A municipality is not liable for a violation of constitutional rights unless a city officer's conduct is directly attributable to the city's policy or custom.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691-94 (1978).  In other words, the Court must address two interrelated issues in analyzing a Section 1983 claim against a city: (1) whether the plaintiff's alleged harm was caused by a constitutional violation; and, if so, (2) whether the city can even be held responsible for that violation.  *See Collins v. Harker Heights*, 503 U.S. 115 (1992).   To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a policy, custom, or practice, attributable to municipal policymakers) and the requisite causation (the policy, custom, or practice as the "moving force" behind the constitutional deprivation).  *Monell*, 436 U.S. at 691-694; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).  Plaintiffs have made no showing of any actionable policy, custom, or practice.  On the contrary, the very facts of this case belie finding such a policy, custom, or practice in that in more than six years of the Skid Row Walk and several months of LA CAN's disruptions, Plaintiffs point to no other arrests other than White's single arrest on July 6, 2011.[6]

4.   **Plaintiffs Are Not Likely To Suffer Irreparable Harm In The Absence Of Preliminary Relief**

For the reasons set forth above, Plaintiffs fail to establish they will face an explicit threat of arrest.  White was arrested after five months of harassing and assaultive

---

[6] To the extent that Plaintiffs attempt to assert section 1983 liability based on a theory of vicarious liability, California Government Code immunities would apply to the City so as to shield it from any such liability.  *See* Cal. Gov. Code §§815.2, 820.2, 820.4, and 820.6.

23

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

behavior toward the Walk attendees and after Lt. Paulson gave him three warnings to discontinue yelling and using the bullhorn to prevent the Walk attendees from hearing each other.  LAPD, through Lt. Paulson, has tried to accommodate the LA CAN disruptors by letting them know that they can protest, but that they cannot make such excessive noise with bullhorns and air horns, all the while integrating themselves into the group of Walk attendees, so that the Walk attendees cannot hold their public meeting.  If the LA CAN members would heed to the warnings by the police, and allow the Walk attendees to go about their walk in a peaceful manner, there would be no arrests by LAPD.

### 5.    The Balance Of Equities Does Not Tip In Plaintiffs' Favor

While Plaintiffs will suffer very little if this injunction is not granted, as they just need to protest in a way that will allow the Walk attendees to conduct their monthly walk, Defendant will suffer greatly.  Section 403 allows an arrest if a person's conduct substantially impairs a public meeting by intentionally committing acts in violation of the customs and practices for governance of the meeting. *Kay*, 1 Cal. 3d at 943.  This statute is the only medium through which law enforcement can control the excessive and aggressive behavior by the LA CAN members in preventing the Walk attendees from conducting their open meeting.  In contrast, the LA CAN members can avoid arrest by protesting without silencing the Walk attendees' speech through harassing and excessive noise level that drown out the voices of the Walk attendees.  This statute is a tool the Los Angeles police officers used as a last resort after multiple warnings, which failed to deter the aggressive actions of the LA CAN members.

### 6.    A Preliminary Injunction Is Not In The Public Interest

Plaintiffs claim that a preliminary injunction should issue because of the significant public interest in upholding First Amendment principles.  However, in so asserting, Plaintiffs are actually devaluing rights to free speech by engaging in conduct to drown out others' freedom of speech.  The type of behavior exhibited by LA CAN members is not in the public interest to advance.  Walk attendees have First Amendment rights as

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

well and it is not in the public interest to have one group able to express themselves while another group, like the Walk attendees, has its speech chilled due to assaultive and aggressive means.  As *Kay* noted, the state has a legitimate concern in regulating and ensuring that "some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion" because  "[f]reedom of everyone to talk at once can destroy the right of anyone effectively to talk at all." *Kay*, 1 Cal.3d at 941.

## IV.   CONCLUSION

For the reasons stated above, Defendant requests that this Court deny Plaintiffs' Motion for Preliminary Injunction and/or a Declaratory Relief.


DATED: September 12, 2011      Respectfully submitted,

                                             CARMEN A. TRUTANICH, City Attorney
                                             GARY G. GEUSS, Chief Assistant City Attorney
                                             LAURIE RITTENBERG, Assistant City Attorney
                                             KIMBERLY A. ERICKSON, Deputy City Attorney
                                             ADENA M. HOPENSTAND, Deputy City Attorney


                                             By   /s/ Kimberly A. Erickson
                                                 Kimberly A. Erickson
                                                 Deputy City Attorney

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION