CAROL A. SOBEL SBN 84483
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Boulevard, Ste. 550
Santa Monica, California 90401
t. 310 393-3055   f. 310 393-3605
e. carolsobel@aol.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA - Western Division**

| | |
|---|---|
| CPR for Skid Row, | CASE NO: LACV 11-6274 JFW (CWx) |
| Plaintiffs, | REPLY IN SUPPORT OF PRELIMINARY INJUNCTION |
| v. | |
| CITY OF LOS ANGELES, | Date: October 3, 2011 |
| Defendants. | Time: 1:30 p.m. |
| | Ctrm: 16 (Hon. John F. Walter) |

Defendant's opposition represents a profound misconception of applicable constitutional principles pertaining to 1) Article III standing to challenge vague laws impacting First Amendment rights; 2) content-based restrictions; 3) time, place and manner regulations on a public sidewalk; and 4) restraints on the courts' authority to rewrite legislation to save it from fatal constitutional infirmities.  The City's misunderstanding of the well-established precedents that render Penal Code §403 violative of due process is underscored by its evidence submitted to justify the indefensible interpretation of the statute to arrest plaintiff White.  The July 6 video demonstrates, indisputably, that White's conduct was fully protected by the First Amendment: the only "conduct" he is shown engaging in is videotaping Lt. Paulson and calling out to Sgt. Crump about his recent jury award in a discrimination lawsuit against the LAPD.

## I. PLAINTIFFS CLEARLY HAVE STANDING TO BRING A FACIAL CHALLENGE AND AN AS APPLIED CHALLENGE

Article III standing requires that "a plaintiff must have suffered an 'injury in fact' defined as 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent' [citation].  There must also be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a favorable decision." *Comite De Jornaleros v. Redondo Beach*, Slip Opinion 17633, 17642, Cir. No. 06-55750 (9th Cir. September 16, 2011) (citations and internal quotation marks omitted).

At a minimum, plaintiff White has standing here.  He was arrested for a violation of Penal Code §403 for fully protected conduct.[1]  He faces possible arrest

---

[1] White is not facing prosecution for the July 6, 2011 arrest. *See* Penal Code §853.6(e)(3).  No charges were filed within 25 days of his release, so to proceed now would require "a new and separate citation or an arrest warrant." *Id. See Schmidlin v. City of Palo Alto*, 157 Cal.App.4th 728, 760 (2007) (notice to appear loses efficacy as accusatory pleading if neither citation nor criminal complaint filed within 25 days). *See People v. Gourley*, 197 Cal.App.4th Supp. 1, 5 (2011).

in the future since Defendant's position is that they can criminalize his conduct. "Where the legal issues on appeal are fairly raised by one plaintiff [who] had standing to bring the suit, the court need not consider the standing of the other plaintiffs." *Id.* at 17644, quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004).

## II. DEFENDANT FAILS TO ADDRESS THE CONTENT-BASED EXEMPTIONS CONDEMNED BY *CITY OF LADUE*

Unable to offer any cogent response to rule of *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), that "[e]xemptions from an otherwise legitimate regulation of a medium of speech may . . . diminish the credibility of the government's rationale for restricting speech in the first place[,]" *id.* at 52, Defendant simply ignores the case. But that does not alter the fact that exempting a class of speech - here relating to "electors" - from a ban on a category of speech undercuts the government's asserted interests and casts serious doubt on the validity of the law.

Both the Supreme Court and the Ninth Circuit have applied this cardinal rule to strike statutes on their face, especially when the law creates a distinction between prohibited and permitted speech. *See e.g., Brown v. Entertainment Merchants Assn.,* 131 S.Ct. 2729, 2740 (2011); *Chaker v. Crogan*, 428 F.3d 1215, 1226-27 (9th Cir. 2005) (Pen. Code §148.6 facially invalid under First Amendment as it only criminalized false statements about police filed in citizen complaints);[2] *Glendale Assoc., Ltd. v. National Labor Relations Board*, 347 F.3d 1145, 1157 (9th Cir. 2003) (invalidating shopping center rule barring naming individual or tenant in protest). Where, as here, the law covers "public meetings," it necessarily reaches expression that may be "critical of the government," so the rationale for any exception to the statute is specially suspect as it involves speech "at the very center

---

[2] *Chaker* held §148.6 facially invalid despite the California Supreme Court's previous rejection of a facial challenge to the law. *Chaker*, 428 F.3d at 1223 n.9.

of the constitutionally protected area of free discussion." *Id.* (internal citation omitted).

### III. DEFENDANT'S EVIDENCE REINFORCES THE IMPERMISSIBLE VAGUENESS INHERENT IN PENAL CODE §403 THAT INVITES CAPRICIOUS ENFORCEMENT BY THE POLICE, AS HERE

Defendant recasts the July 6, 2011 protest to justify White's arrest under §403 by labeling his conduct as part of a "pattern of systematic harassment." Def. Opposition at p.1. The City claims that "disruptive, belligerent actions resulted in White's arrest under section 403 – and not anything White or LA CAN members said." *Id*. This argument fails for two reasons. First, it is belied by Defendant's own evidence, which illustrates how unremarkable White's conduct was on July 6th. Second, even if White did anything unlawful in a past "Safety Walk," which plaintiffs deny,[3] it is beyond dispute that even limited violence and disorder on one day may not be the basis for suppressing lawful expressive activity on another day. *Collins v. Jordan*, 110 F.3d 1363, 1372 (9th Cir. 1997) (rejecting preemptive ban on protests based on prior alleged unlawful activity during demonstrations following the verdicts in the Rodney King police beating case).

### 1. Defendant's Video Establishes the Misapplication of §403

This case arises from monthly "Safety Walks" through Skid Row by public officials and public figures, including City Attorney Carmen Trutanich, Councilmember Jan Perry, Los Angeles Police Department supervisors, Rev. Andy Bales from the Union Rescue Mission and Estela Lopez, head of the Central City East Association. As the July 6 video shows, the walks proceed along streets and

---

[3] Defendant has submitted videotapes of the walk from April, May, June and July. While they make generalizations about what White purportedly did, they cite to no specific point in any video. There is nothing on the July video supporting their claims. Similarly, in the June video, there are two brief periods where White uses a bullhorn to speak. Otherwise, he is only shown near the back of the march, videotaping from a public sidewalk. He is never shown using an airhorn, "stalking," threatening or using violence or any other acts Defendant claims he did.

sidewalks open to, and occupied by, the public. Def. Ex.3.  "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins*, 110 F.3d 1371 (citing *Edwards v. South Carolina*, 372 U.S. 229 (1963); *Thornhill v. Alabama*, 310 U.S. 88 (19 )). "Since time immemorial city streets and sidewalks are public fora." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.,* 533 F.3d 780, 787 (9th Cir. 2008); *see also United States v. Grace*, 461 U.S. 171, 177 (1983).

Throughout the July 6 video, White is seen taping Lt. Paulson. He had a First Amendment right do this. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Glik v. Savalis*, 2011 U.S. App. LEXIS 17841, *13 (1st Cir. Aug. 26, 2011).  Most of the time, he says nothing.[4]  At one point, he calls out to Sgt. Crump, who just won a large verdict against the LAPD, and asks if he is going to put some of that money to work on Skid Row.  Def. Ex.3 (video 18:10:07).  Lt. Paulson took offense and repeatedly ordered White to stop since "that's a personal issue." *Id.* at 18:11:00.  She tells some unknown woman next to White to "tell him not to ask that." *Id.* at 18:11:25. White's response was simple: "It was in the LA Times." *Id.* at 18:11:32.[5]  He had an absolute right to make these statements.[6]

---

[4] Apparently, Lt. Paulson took umbrage at White's statements to Sgt. Crump. Ex. 1 (Transcript of 7/6 at 18:10:07-18:11:32).  Crump sued the LAPD for sexual orientation discrimination and won a verdict of over $1 million. Ex. 3. He is a public figure, who had a public trial and won a large verdict to be paid from the public fisc. As reported in the Los Angeles Times, part of Crump's claim was that he was transferred to Skid Row as punishment for complaining about discrimination. *Id.*

[5] White is also heard directing a comment to Sgt. Crump at 18:16:22.

[6] "The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). Even if Lt. Paulson thought White's remarks provocative, the "government may not prohibit angry or inflammatory speech in a public forum unless it is (1) 'directed to inciting or producing imminent lawless action' *and* (2) 'likely to incite or produce

4

The only "conduct" by White is calling out to Sgt. Crump.[7]  However, the video footage proves that Mr. White's statements and not his "actions" were offensive to Lt. Paulson.[8]  Significantly, White was not arrested until more than 30 minutes after he made these comments.  In between, the video shows no "conduct" by him that even arguably is "disruptive" or "belligerent."[9]  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, ... a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 379-80

---

such action.'" *Id.* (emphasis in original) (citations omitted).  There is no evidence White's remarks rise to this culpable level.

[7]   Lt. Paulson avers that she saw White lead a chant and wave the group on.  Tellingly, while he is next to her almost the entire time and she is followed by a police videographer, no footage supports her claim.  All of it supports White's innocence.

[8]   Evidently, Lt. Paulson also believes that the First Amendment does not protect signing a letter "demanding" an end to the Safety Walks; it evinces a criminal act. (Def. Ex.3 (video 18:33:58) ("No one is allowed to demand that another …").  This is patently false. *See e.g., Collin v. Smith,* 578 F.2d 1197, 1210 (7th Cir. 1978) (village demanded denial of permit for Nazis to march).

[9]   "Belligerent" speech cannot be a basis for arrest here.  "Speech is often provocative and challenging. . . . That is why [it is] . . . protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  *Terminiello v. City of Chicago*, 337 U.S. 1, 4, 93 L. Ed. 1131, 69 S. Ct. 894 (1949).  Defendant could not believe that White could be arrested for purported "disruption" based on the conduct of others.  That would punish White based on "guilt by association."  *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1066 (9th Cir. 1995).  "One of our proudest boasts is that no man can be convicted of crime for conduct, innocent when engaged in, that is later made criminal. [Citation] To let a policeman's command become equivalent to a criminal statute comes dangerously near making our government one of men rather than of laws. [Citation] There are ample ways to protect the domestic tranquility without subjecting First Amendment freedoms to such a clumsy and unwieldy weapon."  *Gregory v. City of Chicago*, 394 U.S. 111, 120 (1973) (edits supplied).

5

(2007). The same rule applies here. The "acts" Lt. Paulson claims to have witnessed White do are both absent from and contradicted by the video submitted by Defendant. Reply, Ex.2 and 3. The Supreme Court has "consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization." *Healy v. James*, 408 U.S. 169, 185-86 (1972).

Penal Code §403 contains no definitions, standards or guidelines beyond the limited requirement of "substantial disruption" interposed by the decision on overbreadth in *In re Kay*. If Defendant is free to choose when to apply §403 by defining what is and what is not a "public meeting" and when to apply the exception for expressive activity directed at "electors,"[10] the police may arbitrarily and capriciously punish disfavored speech, as occurred in the arrest of White.

## 2. Defendant has failed to refute the obvious vagueness in §403

The standardless, broad discretion given to law enforcement by this statute renders it unconstitutionally vague. Not only does it fail to give fair notice or fair warning to persons of ordinary intelligence as to what it prohibits, it also fails to provide explicit standards for enforcement as it inhibits First Amendment freedoms by chilling their exercise by its uncertain meaning. *See Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972). This is the second prong of the vagueness analysis and the one most strongly cautioned against by the Supreme Court. *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).

The fatal vagueness from the failure to provide definitions, standards, or guidelines for enforcement is compounded by Defendant's unwritten interpretation of the statute to cover the expressive activities of Mr. White, which involve only

---

[10] The Walk involves the City Attorney, police, other elected and appointed officials, so, presumably, Plaintiffs could rely on the exception in Penal Code §403 for public meetings involving those over the age of 18 who are eligible to vote. As such, the threshold for disruption is raised to threats, intimidation and violence. There is no evidence of that here.

videotaping and calling to a public figure police officer. Defendant's application of Penal Code §403 to White so clearly fails to give fair notice as to what conduct is prohibited either by statute or by implementing regulation that it necessarily lacks sufficient definiteness to provide fair warning for "ordinary people [to] understand what conduct is prohibited." *Kolender*, 461 U.S. 357; *see Smith v. Goguen,* 415 U.S. at 572-73; *Grayned,* 408 U.S. at 110. Section 403 therefore violates due process.

## IV. PENAL CODE §403 IS NOT A REASONABLE TIME, PLACE AND MANNER REGULATION IN AN ARCHETYPAL PUBLIC FORUM

"Public streets and sidewalks 'occup[y] a special position in terms of First Amendment protection.'" *Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983). Restrictions on activities protected by the First Amendment on a public street are subject to a particularly high degree of scrutiny. *Collins,* 110 F.3d at 1371 (citation omitted). Under either strict scrutiny for content-based regulations in a traditional public forum or intermediate scrutiny for content-neutral regulations, the government still carries the burden of establishing a compelling, or at minimum, a significant interest for the regulation and that it is narrowly tailored to serve a recognized interest. *See United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). That burden is not met here.

Just last week, the Ninth Circuit restated the "well-established principles of First Amendment law" that must guide the Court. "In public places such as streets and sidewalk, 'the State [may] enforce a content-based exclusion on speech if the regulation is necessary to serve a compelling state interest and ... is narrowly drawn to achieve that end. ... For content-neutral regulations, the State may limit 'the time, place, and manner of expression if the regulations are' narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Comite De Jornaleros*, Slip Opinion at 17637 (overruling in

7

part *ACORN v. City of Phoenix*, 798 F.2d 1260 (9th Cir. 1986)); *id.* at 17647 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

But first there must be a time, place and manner regulation. Section §403 is not one. Time, place or manner regulations are only relevant to public fora, "places which by long tradition or by government fiat have been devoted to assembly and debate," where the government's ability to limited speech depends on the nature of the forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). By its plain terms, §403 is not limited to public fora.

On sidewalks and streets, archetypal public fora, the "ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209-10 (1975) (citation omitted). There is simply no reasonable argument that either an invasion of the "substantial privacy interests" of people walking on a public sidewalk, or a "clear and present danger of a serious substantive evil," is threatened by plaintiffs' counter-protests on public sidewalks.

While the cases relied upon by Defendant all involve time, place or manner regulations in various public fora, they are otherwise inapt to prove that Penal Code §403 is such a regulation. For example, in *Frisby v. Schultz*, 487 U.S. 474 (1988), a municipal ordinance restricting "targeted" picketing in a residential area was upheld as a time, place and manner regulation because of the unique compelling interest in protecting a "captive audience" from intrusive expressive activity in the privacy of one's home and because it did not restrict protests on sidewalks anywhere else in the City. There is no similar governmental interest here, where plaintiffs are protesting on a public sidewalk in a business district.

Similarly, a statute making it unlawful for someone "within 100 feet of a a health care facility's entrance to 'knowingly approach' within 8 feet of another person, without that person's consent" to leaflet, display a sign to, or talk to that

1  person is a time, place or manner restriction. *Hill v. Colorado*, 530 U.S. 703, 707
2  (2000). Such a law tells a person with some specificity the place and manner of
3  prohibited expression and was upheld because it only applied to healthcare
4  facilities. *Id.* at 715. Penal Code §403, on its face and as applied, does not do that.

5      In *Ward v. Rock Against Racism*, 491 U.S. at 791, the Supreme Court upheld
6  noise regulations applied to a bandshell in a park. Finding definiteness in both the
7  main regulation and the City's supplemental implementation regulations the
8  Supreme Court found the rules narrowly tailored despite the plaintiffs' claim that
9  there was nothing in the words of the guideline to keep city officials from selecting
10 wholly unsatisfactory sound equipment or technicians, or varying volume and
11 quality controls based on the message of the performers.

12     The decision in *Heffron v. International Soc. For Krishna Consciousness,*
13 *Inc.*, 452 U.S. 640 (1981) is also inapt. There, the Court upheld written restrictions
14 on solicitation on the fairgrounds as a reasonable time, place and manner
15 regulation based on the interest in protecting the safety of attendees. *Heffron*
16 rejected the assertion that the fairground was the analytical equivalent of a
17 traditional public forum such as a street. *Id.* at 651.

18     In sum, §403 does not set time, place or manner restrictions in a public
19 forum as in *Frisby, Hill, Heffron* and *Ward.*

20 **V. NEITHER THE LANGUAGE OF SECTION 403 NOR ANY INFERENCE OF LEGISLATIVE INTENT PERMIT REWRITING THE STATUTE TO MEET FIRST AMENDMENT CONCERNS**

22     "It is true that, when analyzing 'a facial challenge, [the Court] must consider
23 [any] authoritative constructions of the ordinance, including [the City's] own
24 implementation and interpretation of it,' *Forsyth Cnty. v. Nationalist Movement*,
25 505 U.S. 123, 131 (1992)." *Comite*, Sl. Op. at 17648. Nonetheless, "[a]lthough
26 the Court must consider the City's limiting construction of the [statute, the Court
27 is] not required to insert missing terms into the statute or adopt an interpretation
28 precluded by the plain language of the [law]." *Id.*, citing *Foti v. City of Menlo*

9

1  *Park*, 146 F.3d 629, 639 (9th Cir. 1998) (edits supplied).  When deciding a facial
2  challenge, "this Court may impose a limiting construction on a statute only if it is
3  'readily susceptible to such a construction." *Id.* at 17649 (citations omitted).  Penal
4  Code §403 is not susceptible to any further limiting construction beyond what it
5  was given 40 years ago in *In re Kay*, 1 Cal.3d 930 (1970).  The inherent fatal
6  vagueness of the statute simply cannot be put off.

7  The City offers no <u>authoritative</u> construction, let alone <u>any</u> limiting one, that
8  finds "support in the statutory text or the legislative history" of Penal Code §403.
9  *Comite*, Sl. Op. at 17649.  Other than arguing that the state high Court's opinion
10 more than 41 years ago saves the statute, the City offers no evidence of its
11 enforcement to limit §403 to speech and conduct outside the scope of the First
12 Amendment.  The City does not even make such a promise but, given its past use
13 of the statute, any such assurance would be unconvincing.

14 Without more, the Court "cannot simply 'presume[] the [City] will act in
15 good faith and adhere to standards absent from the ordinance's face." *Id.* (edits in
16 original). As emphasized in *Comite De Jornaleros*, the Court "cannot simply
17 presume[] the [City] will act in good faith and adhere to standards absent from the
18 ordinance's face." Sl. Op. at 17649.  "'The First Amendment protects against the
19 Government: it does not leave us at the mercy of *nobless oblige*.  We would not
20 uphold an unconstitutional statute merely because the government promised to use
21 it responsibly." *United States v. Stevens*, 130 S.Ct. 1577, 1591 (2010).

**VI.   CONCLUSION**

For all of the foregoing reasons and the argument and evidence in the moving papers, plaintiffs have shown the necessity for a preliminary injunction.

Dated: September 19, 2011         Respectfully submitted,
                                  LAW OFFICE OF CAROL A. SOBEL

                                  By:  _____/s/_____
                                       Carol A. Sobel
                                       Attorneys for Plaintiffs