CAROL A. SOBEL SBN 84483
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Boulevard, Ste. 550
Santa Monica, California 90401
t. 310 393-3055 f. 310 393-3605
e. carolsobel@aol.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA - Western Division**

| | |
|---|---|
| CPR for Skid Row,<br>Plaintiffs,<br>v.<br>CITY OF LOS ANGELES,<br>Defendants. | CASE NO: LACV 11-6274 JFW (CWx)<br><br>EX PARTE APPLICATION OF NON-PARTY LOS ANGELES COMMUNITY ACTION NETWORK ("LACAN") TO QUASH A SUBPOENA TO PRODUCE DOCUMENTS<br><br>Date: None<br>Time: None<br>Ctrm: Roybal 590<br>(Hon. Carla J. Woerhle) |

This Ex Parte Application is filed following the exhaustion of the meet-and-confer process by counsel. Exhibit 1-3 (Letters to and from plaintiffs' and defendant's counsel). Pursuant to F.R.Civ.P. 45(c), non-party Los Angeles Community Action Network ("LACAN") brings this Ex Parte Application to Quash the Subpoena to Produce Documents served on it by defendant City of Los Angeles on October 20, 2010.

The Ex Parte Application is based on this Application, the accompanying declaration of counsel, and all declarations and exhibits concurrently filed with the Application. The basis of the request to quash is that the subpoena seeks

documents protected by the First Amendment right of association, the Fifth Amendment right against self-incrimination, the attorney work-product privilege. The need for the Ex Parte Application is that the return date on the subpoena is October 31, 2011 and there is insufficient time to proceed by a noticed motion. Declaration of Carol A. Sobel at ¶2. The Court has the discretion to consider an ex parte application pursuant to Local Rule 7-9.

Defendant's counsel has informed respondent's counsel that the City intends to file an opposition to the motion to quash. The City is requesting additional time beyond the 24 hours permitted in the Local Rules. Specifically, the request is that the City be permitted until the end of the day on Thursday, October 27, 2011, to file its opposition. Declaration of Carol A. Sobel at ¶3.

Defendant's counsel is Kimberly Erickson, Deputy City Attorney, 200 N. Main Street, 9th Floor, Los Angeles, California 90012. Ms. Erickson's telephone number is 213 473-6877. Notice of this Ex Parte Application has been given to defendant's counsel as set forth in the attached Declaration of Carol A. Sobel and Exhibits 1 through 3.

Dated: October 25, 2011

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

/s/
By: CAROL A. SOBEL
Attorneys for Non-Party LACAN and for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Los Angeles Community Action Network ("LACAN"), a non-party to this action, moves to quash the subpoena served on it pursuant to F.R.Civ.P. 45. This case involves two issues. The first is whether California Penal Code §403, criminalizing disruption of certain "public meetings," is facially unconstitutional as a vague law that impermissibly distinguishes between classes of protected political speech in violation of the First and Fourteenth Amendments. The second issue is whether Penal Code §403 was unconstitutionally applied to plaintiffs on July 6, 2011 when they engaged in expressive activity on an issue of public concern, directed toward public officials, on a public sidewalk. The first issue is a pure question of law, applying well established First Amendment law. The second issue requires the application of these same settled legal principles to defendant's construction and enforcement of§403 to restrict plaintiffs' expressive activity.

The subpoena served on LACAN seeks "internal" documents on a broad range of subjects.[1] The return date on the subpoena is October 31, 2011. Defendant has now excluded requests for attorney-client privileged documents, but other improper categories remain. The vast majority of the documents sought are privileged under the First Amendment and irrelevant to the subject matter or any claim or defense in this case.[2]

---

[1] A true and correct copy of the subpoena issued to LACAN is attached at Exhibit 1. The initial subpoena was served on October 12, 2011, but was deficient.

[2] Defendants' Answer set our 18 boilerplate affirmative defenses from failure to state a claim for relief to statute of limitations claims to waiver and estoppel. None of these defenses supports compelled disclosure of privileged documents. Exhibit 2 - Answer. In the meet and confer process, defendant asserted that the information is relevant solely to the defense of "failure to state a cause of action." Ex. 5.

To the extent that defendant contends that the documents are somehow relevant to Lt. Paulson's assertion of probable cause to arrest plaintiff White for a "pattern of harassment," the argument necessarily fails for three reasons. First, there is no element of a "pattern of harassment" in the language of §403. Each purported violation of §403 must stand on its own feet. Second, the sufficiency of probable cause is based solely on what an officer knows at the time that an arrest is made. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The only issue is "whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964). Defendant cannot forage through a non-party's files in the hope of finding some justification for defendant's past unlawful acts. Third, it is axiomatic that limited violence and disorder on one day may not be the basis for suppressing lawful expressive activity on another day. *Collins v. Jordan*, 110 F.3d 1363, 1372 (9th Cir. 1997). Criminal liability is personal and may not rest on affiliation with others who may be guilty of a crime.

In seeking a decision that the statute used to arrest White and threatened to be used against others engaged in expressive activity on public sidewalks in Skid Row, plaintiffs have not forfeited their core associational rights and privileges, or their Fifth Amendment rights invoked in response to defendant's representation that the LAPD has "open charges" against participants in public protests.

> Ordinarily, plaintiffs file suits because they believe the courts provide the best, if not the only, means to protect their rights. To say they must waive those rights when they come into court would make any judicial protection meaningless. Here, for example, the Party is suing the government in part because it believes the government has infringed its First Amendment rights of expression and association. An automatic waiver rule would frustrate this purpose. Indeed, requiring plaintiffs to choose between waiver of their constitutional rights and dismissal raises serious due process questions; if plaintiffs have a right to a day in court, that right is seriously infringed.

*Black Panther Party*, 661 F.2d at 1265 - 66.

Their simply is no interest the government can assert in this instance that would justify discovery of what plaintiffs said in internal communications and what others said to them. This would, in essence, provide a chronology of plaintiffs' associations around these protest activities. Not only is such information wholly irrelevant to the issues in this case, but if forced to make these disclosures to the police, it will open those identified through "internal communications" to likely harassment and will have a chilling effect on association with plaintiffs in First Amendment protected activities.

**II. THE FIRST AMENDMENT PRIVILEGE AGAINST COMPELLED DISCLOSURE OF "INTERNAL" DOCUMENTS OF A POLITICAL GROUP OUTWEIGHS ANY POSSIBLE RELEVANCE TO CLAIMS, DEFENSES OR SUBJECT MATTER OF THE ACTION**

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute (an) effective restraint on freedom of association ..." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

> The Constitution protects against the compelled disclosure of political associations and beliefs. Such disclosures 'can seriously infringe on privacy of association and belief guaranteed by the First Amendment.' [Citations.] 'Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.' NAACP v. Alabama, [357 U.S. 449] at 462.

*Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 (1982). *See also, Int'l Union, Etc. v. Nat'l Right to Work Comm.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978) ("First Amendment's protection ... extends not only to the organization itself, but also to ... staff, members, contributors, and others who affiliate with it.").

Protection of the First Amendment right of association is particularly "'important where the government itself is being criticized, for in this circumstance it has a special incentive to suppress opposition.' *First National Bank of Boston v.*

*Bellotti*, 435 U.S. 765, 777 n.11[ ] (1978)." *Black Panthers Party v. Smith*, 661 F.2d 1243, 1265 (D.C. Cir. 1981) (bracketed edit supplied).[3]

**A. The Test Applied to A First Amendment Privilege in Discovery**

The Circuit recently reiterated the two-part analysis applied when a First Amendment privilege is asserted against discovery. First, the party raising the privilege "must demonstrate ... a 'prima facie showing of arguable first amendment infringement.' *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) [citation]. 'This *prima facie* showing requires [the party] to demonstrate that enforcement of the [discovery demand] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.' *Id*. at 350." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2011) (bracketed edits supplied). LACAN has made that showing through the Declaration of Pete White, which sets out past by the LAPD, making it more difficult for LACAN to do its work. White at ¶¶2-3.

If the party opposing discovery "'makes the necessary *prima facie* showing, the evidentiary burden will then shift to the government ... [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired information.' *Id.; see also Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991) (same)." *Perry*, 591 F.3d at 1161. "More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful

---

[3] The *Black Panther* decision was later vacated as moot in *Smith v. Black Panther Party*, 458 U.S. 1118 (1982); however, it has continued to be cited favorably by appellate courts., including most recently in *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). *See also Weisberg v. Webster*, 749 F.2d 864 (D.C. Cir. 1984); *Steffan v. Cheney*, 920 F.2d 74 (D.C. Cir. 1990) ( unanimous *per curiam* opinion).

consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise ... of [the] constitutionally protected right of association.' *NAACP*, 357 U.S. at 463." *Id.* (all edits in original).

The Court must "'balance the burdens imposed on individuals and associations against the significance of the ... interest in disclosure,' *AFL-CIO v. FEC,* 333 F.3d at 176, to determine whether the 'interest in disclosure ... outweighs the harm,' [citation]." *Perry*, 591 F.3d at 1161. Among the factors courts consider are whether the documents are sought for a criminal investigation (which is not the case here), "the centrality of the information sought to the issues in the case, ...; the existence of less intrusive means of obtaining the information, ... ; and the substantiality of the First Amendment interests at stake, ... [.]" *Id.* (edits supplied).

"'The argument in favor of upholding the claim of privilege will ordinarily grow stronger as the danger to rights of expression and association increases.'" *Id.* at 1161, quoting *Black Panther Party*, 661 F.2d at 1267. "The litigant seeking protection need not prove to a certainty that its First Amendment rights will be chilled." *Id.* at 1267-68. "Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.*

### B. "Internal Documents" of A Political Association are Privileged

#### 1. "Internal communications" are privileged

There is no doubt that the "internal documents" sought by defendant in this instance come within the First Amendment privilege. As *Perry* recently explained:

> The First Amendment privilege, however, has never been limited to the disclosure of identities of rank-and-file members. *See, e.g.,*

> *DeGregory* [*v. Atty. Gen. of New Hampshire,*] 383 U.S. [825], 828 [1966] (applying the privilege to 'the views expressed and ideas advocated' at political party meetings); *Dole [v. Services Employees Union, Local 280]*, 950 F.2d [1456], 1459 [9th Cir. 1991] (applying privilege to statements "of a highly sensitive and political character" made at union membership meetings). The existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities. *See NAACP*, 357 U.S. at 460-61; [citation]. We have little difficulty concluding that disclosure of **internal campaign communications** *can* have such an effect on the exercise of protected activities.

*Perry*, 591 F.3d at 1162 (bracketed and bold emphasis added; italic in original).

In this instance, the balance tips sharply in favor of the First Amendment privilege. The "disclosure of ... internal communications and evaluations about advocacy of [a groups'] members' positions on contested political issues' might reasonably 'interfere with the core of the associations' activities by inducing members to withdraw ... or dissuading others from joining." *Id.* at 1162. The threat of disclosure of internal communications in civil litigation may also discourage organizations from joining the public debate. *Id.* at 1162 n.8. Moreover, "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights." *Id.* at 1162-1163. "Associations, no less than individuals, have the right to shape their own messages." *Id.* at 1163 n.9. Defendant can assert no countervailing interest to support compelling disclosure of this information.

### 2. LACAN's employee manual is privileged from disclosure

Defendant also now seeks a copy of LACAN's employee manual. What possible relevance this document could have to this case is inconceivable. Courts have routinely rejected requests for an employee manual where it is not put at issue by the case. A request to produce the employee manual of the District of Columbia

Metropolitan Police Department was rejected where it was irrelevant to plaintiffs' claim of assault and battery by off-duty officers at a night club. *Mazloum v. District of Columbia Metropolitan Police Dept*. 530 F.Supp.2d 282, 294-295 (D.D.C. 2008). Also, "[t]o the extent [defendant] seeks disclosure of the entire Policies and Practices Manual, [the] motion is denied as overbroad and irrelevant." *Breedlove v. Mandell*, 2008 U.S. Dist. LEXIS 15648, *4 (W.D.N.Y. 2009). Defendant cannot demonstrate a basis for compelling disclosure of the employee manual of a non-party simply because its co-director exercises his First Amendment rights in a public forum on a public issue.

## III. THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION PROTECTS AGAINST DISCLOSURE

Plaintiff White was arrested by defendant on July 6, 2011 on a misdemeanor charge of violating Penal Code §403. Although the LAPD would now need to refile the charge against Mr. White, the City has a year from his arrest to prosecute that charge. In addition, at the July 6 roll-call session for officers from LAPD's Central Division, Lt. Shannon Paulson distributed photographs of individuals alleged to have been taken at prior Safety Walk occurrences. As she did so, she instructed officers to pay particular attention to these individuals and represented that the LAPD currently had "open charges" on each of them. Facing possible criminal prosecution, even if the documents sought were not wholly irrelevant and subject to a First Amendment privilege, compelled disclosure would violate the Fifth Amendment right of plaintiff White and all of the others for whom Lt. Paulson represented there were "open" criminal charges, as well as anyone else the LAPD believes has committed a crime through these protest activities.

The Fifth Amendment "'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *U.S. v.*

*Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972)). "A reasonable belief that information concerning [activity], such as that sought in the [subpoena] here, might be used to establish criminal [prosecutions] can support a claim of Fifth Amendment privilege. [Citation.]" *Bodwell*, 66 F.3d at 1001. *See also Pillsbury Co. v. Conboy*, 459 U.S. 248, 252-255 (1983) (non-party civil deponent could and should have asserted Fifth Amendment privilege despite grant of immunity); *Maness v. Meyers*, 419 U.S. 449, 461-462 (1975) (even if documents could be suppressed or objected to on Fifth Amendment grounds in criminal case, civil litigant would be forced to forfeit the very protection the privilege guarantees) (quoting *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951).

## IV. ANY VIDEOTAPES OF LAPD OFFICERS OTHER THAN THOSE RELATED TO THE SAFETY WALKS ARE NOT DISCOVERABLE UNDER THE ATTORNEY-WORK PRODUCT PRIVILEGE

To the extent that defendant is seeking broad discovery of Community Watch materials LACAN has created relating to LAPD officers other than any such materials created on the Safety Walks, the documents are not only irrelevant, but are not discoverable pursuant to the attorney-work product privilege. The videos are collected in consultation with, and at the direction of, counsel with whom LACAN collaborates on monitoring existing injunctions and settlements, and in anticipation of possible litigation. Declaration of Pete White at ¶¶4-11; Declaration of Sobel at ¶6. Indeed, in a similar discovery demand by the City last year, Magistrate Judge Zarefsky concluded that the videos are privileged. Ex. 7.

The work product doctrine protects from disclosure any material obtained and prepared by an attorney *or the attorney's agent* in anticipation of litigation or preparation for trial. *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947). A primary purpose behind the rule is to prevent one party from taking advantage of another's

efforts in litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992). The doctrine is now codified by F.R.Civ.P. 26(b)(3):

> Plaintiffs may not discover documents prepared in anticipation of litigation by or for another party or its representative unless the party seeking discovery shows that it has substantial need for the materials and cannot obtain the substantial equivalent by other means without undue hardship.

F.R.Civ.P. 26(b)(3)(A). The work product doctrine covers a wide range of materials. *Hickman*, 329 U.S. at 511.

There is no issue in this case - either in the claims asserted by plaintiffs or the boilerplate defenses asserted by defendant - that would put any work-product protected documents at issue. To the extent that defendant claims it needs this material to establish probable cause to arrest Mr. White on July 6, 2011, defendant cannot overcome the privilege against production. If there was not probable cause to arrest White on July 6, 2011, that is evident from the facts known to the officers at the time and not from information gleaned later. *Torres v. Goddard*, 2010 U.S. Dist. LEXIS 87621, *16-17 (D.C. Az. 2011).[4]

---

[4] "If the affidavits supporting the seizure warrants lacked sufficient probable cause or failed to include the requisite specificity required by the Constitution, these defects should appear in the documents themselves. ... Similarly, Plaintiffs' claims under the Fourteenth Amendment and the Commerce Clause depend on facts gained from the public seizure and forfeiture documents. What Defendants Goddard or Holmes thought about the seizure warrants is not relevant to whether there was a due process or commerce clause violation. Therefore, the attorneys' mental impressions are not at issue in the case." *Torres v. Goddard*, *supra*, at 16-17.

## CONCLUSION

For all of the foregoing reasons, non-party LACAN respectfully requests the subpoena be quashed.

Dated: October 25, 2011

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

/s/

By: CAROL A. SOBEL
Attorneys for Non-Party LACAN and plaintiffs