**UNITED STATES DISTRICT COURT**  
**CENTRAL DISTRICT OF CALIFORNIA**

**PRIORITY SEND**

**CIVIL MINUTES -- GENERAL**

Case No.    **CV 11-6274-JFW (CWx)**                                     Date:  January 26, 2012

Title:        CPR for Skid Row, et al. *-v-* City of Los Angeles

---

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                                      None Present
   Courtroom Deputy                                    Court Reporter


**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                              None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING DEFENDANT CITY OF LOS ANGELES' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT
**[filed 12/22/2011; Docket No. 34];**

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT **[filed 12/22/2011; Docket No. 36];**

ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND/OR DECLARATORY RELIEF **[filed 8/22/2011; Docket No. 5]**

   On December 22, 2011, Defendant City of Los Angeles ("Defendant") filed a Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment.  On December 30, 2010, Plaintiffs CPR for Skid Row, Hamid Khan, and Pete White (collectively "Plaintiffs") filed their Opposition.  On January 9, 2012, Defendant filed a Reply.  On December 22, 2011, Plaintiffs filed a Motion for Summary Judgment or Partial Summary Judgment.  On December 30, 2011, Defendant filed its Opposition.  On January 9, 2012, Plaintiff filed a Reply.

   Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for January 30, 2012 is hereby vacated and the matters taken off calendar.  After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff CPR for Skid Row ("CPR") is an unincorporated association that advocates for low-income and homeless individuals on Skid Row. Plaintiffs' Combined Statement of Facts ("PCSF") at ¶ 1. Plaintiffs Pete White ("Mr. White") and Hamid Khan are members of CPR. PCSF at ¶ 2. Mr. White is also the founder of the Los Angeles Community Action Network ("LACAN"), a community advocacy group on Skid Row, and has been its co-director since 1999. PCSF at ¶ 2; Defendant's Combined Statement of Facts ("DCSF") at ¶ 1.

Approximately six months ago, Plaintiffs began conducting protests of the Skid Row Neighborhood Watch Walk (the "Skid Row Walk"), which is a monthly guided tour of Skid Row organized by the Central City East Association ("CCEA"), the entity which operates several of the Business Improvement Districts in the area of Central City East. DCSF at ¶ 8. CCEA's stated purpose for the Skid Row Walk is to increase awareness about the neighborhood and its needs. Declaration of Shannon Paulson in Support of Defendant's Motion for Summary Judgment ("Paulson Declaration") at ¶ 3; Plaintiffs' Exhibit 4. CCEA invites elected officials, police, and business owners to join in the Skid Row Walk, which has occurred every month for the last five years. DCSF at ¶ 12; Paulson Declaration at ¶ 3. The Skid Row Walk begins with an initial meeting of participants, that includes introductions, a question and answer session, and a discussion regarding concerns or issues. After the initial discussion, the participants commence a walking tour of Skid Row during which they visit any locations of concern and discuss any particular problems or issues associated with those locations. Paulson Declaration at ¶ 3. The entire Skid Row Walk occurs on public sidewalks.

CPR and its members object to the Skid Row Walk because they believe that the Skid Row Walk increases police presence and arrests in the Skid Row area and demeans and depersonalizes homeless individuals. Declaration of Hamid Khan in Support of Plaintiffs' Motion for Summary Judgment ("Khan Declaration") at ¶ 4; Declaration of Darren "Pete" White in Support of Plaintiffs' Motion for Summary Judgment ("White Declaration") at ¶ 9. CPR believes that the primary purpose of the walks is to gain support for repressive government measures directed toward the low-income residents of Skid Row. Kahn Declaration at ¶ 4. One of the stated objectives of CPR is to convince elected officials and CCEA to terminate the Skid Row Walks. White Declaration at ¶ 9; DCSF at ¶ 19.

During the monthly walks, members of CPR and LACAN have surrounded walk participants and used drums, whistles, and blowhorns, often no more than a foot or two away from walk participants, making it extremely difficult for walk participants to communicate with and hear one another. Paulson Declaration at ¶¶ 5-14. When walk participants attempt to move away from the noise, they are pursued by the LACAN and CPR protestors, and on at least one occasion, CCEA

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

was forced to prematurely terminate the Skid Row Walk due to the loud noise. Paulson Declaration at ¶ 10.

The Los Angeles Police Department is an invited participant of the Skid Row Walk, and due to the escalation of aggression exhibited by certain individuals during prior walks, a number of police officers were assigned to be present at the Skid Row Walk on July 6, 2011. Prior to the Skid Row Walk that evening, Lieutenant Shannon K. Paulson and a Captain of the Los Angeles Police Department conducted an extensive briefing of the officers who would be present, and outlined the various scenarios under which they might need to make an arrest under California Penal Code § 403. Lieutenant Paulson distributed photographs of "persons of interest" who had engaged in substantially aggressive and disruptive behavior on prior walks. Paulson Declaration at ¶ 15. Mr. White's photograph was not among the photographs distributed during that meeting.[2]

During the July 6, 2011 walk, protestors from LACAN and CPR chanted, yelled, used bullhorns, and surrounded and followed the walk participants, making it virtually impossible for the walk participants to hear each other speak. The protestors were given two warnings clearly advising them that they could not continue their disruptive conduct. The warnings were captured on videotape by Mr. White and the Los Angeles Audio-Visual Technician. The first warning was provided by Captain Chamberlain, who stated:[3]

> Hey listen, I just got to let you know that if it starts getting real loud, if it starts getting bullhorns in the ears and things like that, there's going to be an arrest that's going to be made, okay? . . . Just so you know, you obviously have a right, First Amendment issue and everything else, but if we start getting to the point like, last time, I guess, you got the air-horns you got right up to somebody's head, that's not going to be tolerated this time. And they're going to go to jail under either for 403 or for 415 and I just want to be very clear and I don't want that. I just want you to be able to do your event and them to be able to do their event. Please be respectful of each other as best as you possibly can. I just want to be very open about that. Same to you Pete also, I talk to you all the time, Pete, you're aware of that. I just want to make sure we're communicating as clear as we possibly can so that you understand what's going to happen and how it's going to happen.

DCSF at ¶ 23; Defendant's Motion for Summary Judgment ("DMSJ") at Exhibit 3. Lieutenant Paulson then added the following to Captain Chamberlain's warning:

> Here's my concern. Is, is we have to have mutual respect for each of our meetings. They're trying to communicate; they're trying to have a meeting. They're not running

---

[2] Prior to the July 6, 2011 Skid Row Walk at which he was arrested, Mr. White had only attended one other Skid Row Walk in June 2011.

[3] Legal observers attended the Skid Row Walk as a liaison between Mr. White and the Los Angeles Police Department. DCSF at ¶ 17; PCSF at ¶ 54. The protestors, including Mr. White, refused to communicate with the police officers during the walk, and as a result, the warnings were communicated to the legal observers who in turn agreed to advise the protestors. DCSF at ¶ 16; Paulson Declaration at ¶ 18.

> a political demonstration. It's just a walking meeting, and, as I don't know if you've been on prior ones, they can't communicate. They can't hear themselves speak. They can't talk like you and I are right now, as close as we are. We can't have that. What they have, just like when you guys have your gathering . . . What I need to have is their right to have their meeting, their public meeting, it's a lawful public meeting, just like your lawful public meetings. They have to be able to communicate. If their meeting is disrupted and they can't do that. And as they've tried repeatedly to move away from the noise, so they can facilitate their meeting, that's when we cross the threshold. I can't have that. I cannot have that. You guys can publicly demonstrate. You guys can stand on the corner. You guys can march on your own march. You can, I mean we will facilitate it for you, that's not a problem. But if it gets to the point when it is disturbing a lawful public meeting, just like we wouldn't let anyone do it to you, we can't have anyone do it to them.

DCSF at ¶ 24; DMSJ at Exhibit 3. When the protestors continued their disruptive conduct, Lieutenant Paulson provided a second and final warning, which was again captured on videotape by Mr. White and the Los Angeles Audio-Visual Technician:

> But you understand how a public meeting couldn't possibly be in this? Look how close you and I have to be and they aren't even directing it at us . . . . It's a public meeting. . . . But they don't have the right to disrupt a public meeting. They can have their demonstration. They can be vocal. But they just can't do it in a fashion that disrupts another public meeting. It just can't happen. We wouldn't allow it to your public meeting or to LACAN. We wouldn't allow it. We're getting real close here. And I don't want to do this . . . . If it continues to be this way . . . I want to facilitate both your meetings . . . We're going to arrest people for disrupting a public meeting and creating a disturbance . . . That would be the charge . . . . There might be some more involved things since this has obviously been a campaign, a collusion to engage in this activity. This is an organized effort. It's a pubic meeting and the host is trying to engage in and it has been repeatedly disrupted and we have asked repeatedly for that disruption to stop; we have offered to facilitate everybody else's demonstration, everybody else's public meeting and we have been denied.

*Id.*

After this final warning, Mr. White began loudly yelling and chanting, "We are not resisting, this is our First Amendment Right" and several protestors joined him. Although Mr. White faced the police officers, he was less than a foot from the head and back of one of the walk participants. Plaintiffs' MSJ Exhibit 13. At Lieutenant Paulson's direction, Mr. White was then arrested for violation of California Penal Code § 403.

According to Plaintiffs, Mr. White's arrest created fear among the members of CPR that they too would face arrest if they continued to protest the Skid Row Walk. As a result, on July 29, 2011, Plaintiffs filed this action against the City of Los Angeles under 42 U.S.C. § 1983, alleging that California Penal Code § 403 is unconstitutional under the First and Fourteenth Amendments of the United States Constitution and analogous provisions of the California Constitution. On August 22, 2011 Plaintiffs filed a Motion for Preliminary Injunction And/Or Declaratory Relief. The Court consolidated the hearing on Plaintiffs' Motion for Preliminary Injunction And/Or Declaratory Relief

with the trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2), and scheduled the trial for February 14, 2012.

The Court agrees with the parties and concludes that this case is properly resolved on the parties' pending cross-motions for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. DISCUSSION

### A. CALIFORNIA PENAL CODE § 403 IS CONSTITUTIONAL ON ITS FACE.

California Penal Code § 403 makes it a misdemeanor to disrupt certain public meetings and assemblies. Specifically, it provides:

Every person who, without authority of law, willfully disturbs or breaks up any

assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor.[4]

California Penal Code § 403.

Plaintiffs contend that California Penal Code § 403 is unconstitutional on its face. "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5 (1982).

Over forty years ago, the California Supreme Court extensively examined California Penal Code § 403, and rejected a First Amendment challenge to the statute. *See In re Kay*, 1 Cal.3d 930 (1970). In doing so, the *Kay* Court carefully discussed and balanced the competing First Amendment issues raised by California Penal Code § 403:

> The Constitution does not require that any person, however lofty his motives, be permitted to obstruct the convention or continuation of a meeting without regard to the implicit customs and usage or explicit rules governing its conduct. The constitutional guarantees of the free exercise of religious opinion, and of the rights of the people peaceably to assemble and petition for a redress of grievances, would be worth little if outsiders could disrupt and prevent such a meeting in disregard of the customs and rules applicable to it. . . . Audience activities, such as heckling, interrupting, harsh questioning, and booing, even though they may be impolite and discourteous, can nonetheless advance the goals of the First Amendment. For many citizens such participation in public meetings, whether supportive or critical of the speaker, may constitute the only manner in which they can express their views to a large number of people; the Constitution does not require that the effective expression of ideas be restricted to rigid and predetermined patterns. A cogent

---

[4]California Penal Code § 302 provides in relevant part:

Every person who intentionally disturbs or disquiets any assemblage of people met for religious worship at a tax-exempt place of worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where the meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail for a period not exceeding one year, or by both that fine and imprisonment.

California Elections Code § 18340 provides:

Every person who, by threats, intimidations, or unlawful violence, willfully hinders or prevents electors from assembling in public meetings for the consideration of public questions is guilty of a misdemeanor.

remark, even though rudely timed or phrased, may contribute to the free interchange of ideas and the ascertainment of truth.

*Id.* at 938-39 (internal citations and quotations omitted). "Nonetheless, the state retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion." *Id.* at 941. Indeed, "[f]reedom of everyone to talk at once can destroy the right of anyone effectively to talk at all. Free expression can expire as tragically in the tumult of license as in the silence of censorship." *Id.*

Because a literal application of California Penal Code § 403 would be unconstitutionally overbroad, the *Kay* Court adopted a narrow interpretation of California Penal Code § 403 in order to eliminate any doubt as to the statute's constitutionality. *Id.* at 941. In light the purposes of section 403 and the competing First Amendment interests at stake, the *Kay* Court interpreted California Penal Code § 403 to authorize the imposition of criminal sanctions "only when the defendant's *activity* itself -- and not the *content* of the activity's expression -- substantially impairs the effective conduct of a meeting." *Id.* at 942. Specifically, the California Supreme Court found that a violation of Section 403 required the following showing: "that the defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." *Id.* at 943. "In instances in which the appropriate standard of conduct lies in doubt, a warning and a request that defendants curtail their conduct, either by officials or law enforcement agents should precede arrest or citation." *Id.* at 945.

The Court concludes that California Penal Code § 403, as limited by the California Supreme Court, is constitutional on its face because: (1) it is a reasonable time, place, or manner restriction under the First Amendment; (2) it does not violate equal protection guarantees; and (3) it is not unconstitutionally vague.

> 1. California Penal Code § 403 is a valid time, place or manner regulation under the First Amendment and analogous provisions of the California Constitution.

"The government's right to limit expressive activity in a public forum is sharply circumscribed." *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998) (quotations and citations omitted). "Generally, content-based speech restrictions in public fora are subject to strict scrutiny." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533 F.3d 780, 787 (9th Cir. 2008). Indeed, content-based regulations are "presumptively unconstitutional," and "pass constitutional muster only if they are the least restrictive means to further a compelling interest." *S.O.C., Inc.*, 152 F.3d at 1145. "The government may, however, impose reasonable 'time, place, or manner' regulations on speech in public fora, provided the regulations 'are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Center for Bioethical Reform*, 533 F.3d at 787 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

A law "is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face." *Id.* "A

statute that restricts speech only when it is disruptive because of its manner, not its content, is an example of content-neutral regulation that has been affirmed time and again." *Id.* at 790. California Penal Code § 403, as interpreted by the California Supreme Court, is content neutral - it restricts speech only when it is disruptive because of its manner, not its content. Indeed, a violation of California Penal Code § 403 occurs only when the defendant's *activity* itself -- and not the *content* of the activity's expression -- substantially impairs the effective conduct of a meeting.

      Plaintiffs contend that California Penal Code § 403 is content-based because California Penal Code § 403, on its face, does not apply to religious meetings in a tax-exempt building or assemblies of electors (which are addressed by California Penal Code § 302 and California Elections Code § 18340). However, merely because California Penal Code § 403 is inapplicable to certain types of meetings does not make it a content-based regulation of speech. *See, e.g., Center for Bioethical Reform*, 533 F.3d at 791-93 (holding that Cal. Penal Code § 626.8, which applies where the acts or presence of a person interferes with a school's activities or disrupts the school or its pupils, regulates the manner rather than content of speech). Indeed, the cases cited by Plaintiffs are inapposite – they involve ordinances which establish a general ban on speech but except certain speech based on its subject matter. *See, e.g., City of Ladue v. Gilleo*, 512 U.S. 43 (1994)(considering the constitutionality of an ordinance that banned any signs on private property but exempted road and driveway signs, health inspection signs, signs for churches, religious institutions, and schools, etc.); *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 2008) (considering an ordinance that bans the posting of signs on public property or displaying signs in the public right of way, but exempts temporary "open house" real estate signs, signs placed by government entities, and safety, traffic, and public informational signs, etc.). In stark contrast, California Penal Code § 403 bans all speech where its manner substantially interferes with the conduct of a meeting other than a *meeting* referred to in California Penal Code § 302 or California Elections Code § 18340. Although California Penal Code § 403 excepts certain types of meetings from its purview, it importantly does not except any speech based on its subject matter. Because California Penal Code § 403 is plainly directed to the behavior or conduct of the speaker rather than on the content of his speech or reaction of his listeners, the Court concludes it is content neutral.

      The Court also concludes that California Penal Code § 403 is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels for communication of the information. As the Ninth Circuit recently stated:

> A narrowly tailored time, place, or manner restriction on speech is one that does not burden substantially more speech than is necessary to achieve a substantial government interest. It must target and eliminate no more than the exact source of 'evil' it seeks to remedy. Moreover, although the chosen restriction need not be the least restrictive or least intrusive means available to achieve the government's legitimate interests, the existence of obvious, less burdensome alternatives is a relevant consideration in determining whether the fit between the ends and means is reasonable.

*Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009) (quotations, alterations, and citations omitted).

With respect to California Penal Code § 403, as the California Supreme Court held in *Kay*, the state "retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion. The freedom of everyone to talk at once can destroy the right of anyone effectively to talk at all." *Kay*, 1 Cal. at 941. The Court concludes that California Penal Code § 403 does not burden substantially more speech than is necessary to achieve this substantial interest. It is limited to penalizing conduct which substantially impairs the effective conduct of a meeting, which ensures that all the competing First Amendment interests are protected. It allows both the speakers at a meeting and those who wish to oppose them ample opportunity to speak. As long as the protestors do not substantially impair the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which they knew, or reasonably should have known, there are no limits placed on the protestors. Moreover, Plaintiffs have presented no obvious, less burdensome alternative available to achieve the government's legitimate and substantial interest.

Accordingly, the Court concludes that California Penal Code § 403, on its face, does not violate the First Amendment or the analogous provisions of the California Constitution.

2. <u>California Penal Code § 403 does not violate Equal Protection guarantees.</u>

Plaintiffs' equal protection claim is premised on their argument that California Penal Code § 403 is content-based. However, because the Court has already concluded that California Penal Code § 403 is content neutral, Plaintiffs' equal protection claim fails.

Indeed, as with the First Amendment cases cited by Plaintiffs, the equal protection cases cited by Plaintiffs are inapposite. In the equal protection cases cited by Plaintiffs, the ordinances or statutes discriminated between lawful and unlawful conduct based upon the content of the demonstrator's message. *See Carey v. Brown*, 447 U.S. 455, 460 n.4 (1980) (addressing statute which distinguished between picketing relating to a labor dispute and other picketing); *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) (addressing ordinance which distinguished between picketing relating to a labor dispute and other picketing); *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006) (addressing ordinance which banned vending, tabling, and leafleting, but exempted labor-related activities). In contrast to the cases cited by Plaintiffs, California Penal Code § 403 prohibits all conduct, regardless of subject matter or viewpoint, that substantially interferes with the conduct of a meeting, other than a meeting referred to in California Penal Code § 302 or California Elections Code § 18340. Although California Penal Code § 403 excepts certain types of meetings from its purview, it does not except any conduct based upon the content of an individual's message.

3. <u>California Penal Code § 403 is not unconstitutionally vague.</u>

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). As the Ninth Circuit recently stated:

> An ordinance may be void for vagueness because either it (1) fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; (2)

>impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application; or (3) abuts upon sensitive areas of basic First Amendment freedoms, operating to inhibit the exercise of those freedoms.

*Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011) (quotations, alterations, and citations omitted). However, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Regulations may be "marked by flexibility and reasonable breadth, rather than meticulous specificity." *Id.* (quotations and citations omitted).

Plaintiffs argue that the terms "public meeting," "political meeting," and "public questions," which do not appear in the text of California Penal Code § 403 but rather in the heading of California Penal Code § 403 or the text of California Elections Code § 18340, are unconstitutionally vague. The Court disagrees that any potential ambiguity in these terms renders California Penal Code § 403 unconstitutionally vague. Moreover, as to the term "political meeting" which appears only in the heading of California Penal Code § 403, and the heading of Division 18, Chapter 4, Article 4 of the Elections Code, the Court concludes that it is clear that "political meeting" merely means a meeting as defined by California Elections Code § 18340. *See* California Elections Code § 5 ("Division, part, chapter, article, and section headings do not in any manner affect the scope, meaning, or intent of this code."). As to the terms "public meeting" and "public questions," the Court concludes that a person of ordinary intelligence can easily determine whether his conduct is governed by California Penal Code § 403, and that California Penal Code § 403 is sufficiently clear so as not to impermissibly delegate basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis.[5]

The Court also concludes that California Penal Code § 403 does not abut upon sensitive areas of basic First Amendment freedoms, operating to inhibit those freedoms. As discussed, California Penal Code § 403 only applies when the defendant's *activity* itself -- and not the *content* of the activity's expression -- substantially impairs the effective conduct of a meeting. Specifically, in order to run afoul of California Penal Code § 403, the defendant must substantially impair the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known. And, in instances in which the appropriate standard of conduct may be in doubt, a warning and a request that defendants curtail their conduct, such as the warnings given in this case, should precede arrest or citation. With the limiting construction provided by the California Supreme Court in *Kay*, California Penal Code § 403 does not abut upon sensitive areas of basic First Amendment freedoms or operate to inhibit those freedoms.

### B.   CALIFORNIA PENAL CODE § 403 IS CONSTITUTIONAL AS APPLIED.

---

[5]While Plaintiffs cite *SEIU v. City of Houston*, 595 F.3d 588, 605 (5th Cir. 2010) for their contention that the term "public meeting" is impermissibly vague, the Fifth Circuit only found the term "public gathering" unconstitutionally vague. Indeed, the Fifth Circuit failed to address the term "public meeting" which appeared within the same ordinance.

The Court concludes that California Penal Code § 403 is constitutional as applied to Mr. White's conduct.

The undisputed facts demonstrate that: (1) Skid Row Walk is not a "protest" but a meeting which requires that the participants be able to communicate with one another in order to carry out the purposes or goals of the Skid Row Walk; (2) one of the objectives of CPR and Mr. White was to convince elected officials and CCEA to end the Skid Row Walks; (3) protestors from LACAN and CPR chanted, yelled, used bullhorns, and surrounded and followed the walk participants, which made it virtually impossible for the walk participants to hear each other speak and effectively prevented CCEA from conducting the Skid Row Walk; (4) the Los Angeles Police Department gave at least two very specific and detailed warnings that protestors would be arrested if the noise became so loud that walk participants could not hear themselves speak; and (5) Mr. White was arrested after loudly yelling and chanting, "We are not resisting, this is our First Amendment Right" less than a foot from the head and back of one of the walk participants.

Accordingly, the undisputed facts demonstrate that Mr. White substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of such a meeting, of which he knew, or as a reasonable man should have known. Moreover, there can be no serious dispute that Mr. White was arrested because his conduct substantially impaired the conduct of the Skid Row Walk and was not based upon, in any manner whatsoever, the content of his chant.

Under these circumstances, the Court concludes that California Penal Code § 403 is constitutional as applied.[6]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiffs' Motion for a Preliminary Injunction and/or Declaratory Relief and Plaintiffs' Motion for Summary Judgment or Partial Summary Judgment are **DENIED.**

The parties are ordered to meet and confer and prepare a joint proposed Judgment which is consistent with this order. The parties shall lodge the joint proposed Judgment with the Court on or before **February 6, 2012.** In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a declaration outlining their objections to the opposing party's version no later than **February 6, 2012.**

IT IS SO ORDERED.

---

[6]Because the Court concludes that California Penal Code § 403 is constitutional on its face and as applied by the City of Los Angeles, the Court finds it unnecessary to address any of the remaining issues raised by the parties.