**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CPR FOR SKID ROW, an unincorporated association; HAMID KHAN; PETER WHITE, *Plaintiffs-Appellants*, <br><br> v. <br><br> CITY OF LOS ANGELES, *Defendant-Appellee.* | No. 12-55289 <br><br> D.C. No. 2:11-cv-06274-JFW-CW <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
January 7, 2014—Pasadena, California

Filed March 10, 2015

Before: Stephen Reinhardt and Richard R. Clifton, Circuit
Judges, and Jennifer A. Dorsey, District Judge.[*]

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by Judge Reinhardt

---

[*] The Honorable Jennifer A. Dorsey, U.S. District Judge for the District
of Nevada, sitting by designation.

2        CPR FOR SKID ROW V. CITY OF LOS ANGELES

## SUMMARY[**]

### Civil Rights

The panel affirmed in part and reversed in part the district court's summary judgment and remanded in an action challenging a California statutory scheme pertaining to public protests.

Plaintiffs, CPR for Skid Row and two of its members, brought suit after the members were threatened with arrest and plaintiff Peter White was arrested for chanting loudly in protest of an organized walk by public officials and others through Los Angeles' Skid Row.  Plaintiffs challenged California Penal Code § 403, which makes it a misdemeanor to "willfully disturb[] or break[] up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in . . . Section 18340 of the Elections Code."  Section 18340 makes it a misdemeanor to willfully hinder or prevent, by threats, intimidations, or unlawful violence, "electors from assembling in public meetings for the consideration of public questions."

Affirming in part, the panel held that § 403 was not unconstitutional on its face. The panel rejected plaintiffs' challenge to § 403 on the grounds that it was unconstitutionally vague or an unconstitutional restriction on speech.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Reversing in part, the panel held that California Penal Code § 403 was unconstitutionally applied to CPR's activities. The panel held that the plain language of the statute and its legislative history demonstrate that § 403 does not cover political meetings, including the meeting at issue here. The panel held that because CPR's activities fell within the exception carved out by Elections Code § 18340, § 403 did not criminalize CPR's conduct.

Concurring in part and dissenting in part, Judge Reinhardt agreed with the majority's reversal of the district court's judgment in favor of the defendant and its holding that § 403 of the Penal Code may not be applied to plaintiffs. Judge Reinhardt would hold, however, that § 403 (and §§ 18340 and 302 as well) are unconstitutionally void for vagueness and not simply as applied in the particular circumstances. In addition, although he would not decide the question, Judge Reinhardt believes the statutory scheme, or at least a part of it, is likely also unconstitutional as content-based.

## COUNSEL

Carol A. Sobel (argued), Law Office of Carol A. Sobel, Santa Monica, California, for Plaintiffs-Appellants.

Kimberly Anne Erickson (argued), Deputy City Attorney, Laurie Rittenberg, Assistant City Attorney, and Carmen A. Trutanich, City Attorney, Los Angeles City Attorney's Office, Los Angeles, California, for Defendant-Appellee.

## OPINION

CLIFTON, Circuit Judge:

This appeal presents the question of whether California Penal Code § 403, which makes it a misdemeanor to "willfully disturb[] or break[] up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in . . . Section 18340 of the Elections Code," is constitutional.  Plaintiffs challenge that statute both facially and as applied to them.  We hold that § 403 is not unconstitutional on its face and affirm, in part, the decision of the district court to that effect.  Because § 403 does not properly apply to Plaintiffs' activity, however, we reverse the district court's summary judgment dismissing the action and remand for further proceedings.

## I.  Background

Plaintiffs are an organization, CPR for Skid Row, and two of its members, Hamid Khan and Pete White (collectively "CPR" or "Plaintiffs").  CPR was founded in 2011 to advocate for the rights of people who reside in the area of downtown Los Angeles known as Skid Row.  White is also a founder and co-director of the Los Angeles Community Action Network.

CPR and its members oppose walks through the Skid Row neighborhood sponsored by the Central City East Association ("CCEA").   CCEA is a non-profit corporation that administers two Business Improvement Districts in downtown Los Angeles and "serve[s] as the principal voice of industrial downtown."  In conjunction with the Midnight Mission and Los Angeles City Councilperson Jan Perry, the

CCEA in 2005 began organizing community neighborhood walks through Skid Row (the "Walks").  According to the CCEA, the Walks are attended by public officials, law enforcement, members of the judiciary, students, academics, local business owners, social service providers, and the media.  The Walks take place on the public sidewalks of the Skid Row neighborhood and, according to the CCEA, allow participants "to see for themselves and learn about the challenges, not through a windshield, but from the experience of walking through [Skid Row] and interacting with social service representatives, police, residents and business owners."

Members of CPR, in contrast, believe that the Walks "support[] and promote[] the criminalization of homelessness and poverty and [are] comprised only of those from outside of [the Skid Row] community."  According to CPR, the Walks are "dominated by police officers and representatives of the business community," which are "exactly the same institutions that are promoting the unprecedented levels of police presence, citations and arrests in Skid Row that have made many homeless and poor residents less safe and/or less stable."  The Walks "do not represent the interests of the low-income community, nor [CPR's] vision for public safety." CPR members believe that "the public officials who participate [in the Walks] are demeaning and depersonalizing homeless individuals in order to gain support for repressive measures against the low-income residents of Skid Row who need critical assistance."

CPR thus began staging protests of the Walks.  In preparation for the July 6, 2011, Walk, Lieutenant Shannon Paulson, the Los Angeles Police Department officer in charge of the Central Area Safer Cities Initiative Task Force in Skid

Row, held a meeting with her officers and distributed photographs of particular individuals who had engaged in what she had deemed to be "aggressive" behavior at previous Walks in violation of California Penal Code § 403. White's photograph was not among those distributed.

At the July 6, 2011, Walk, CPR protestors shouted chants, including: "We are not resisting. This is our First Amendment Right." They also banged on drums, often in close proximity to the Walk participants. Lieutenant Paulson and Captain Todd Chamberlain spoke with legal observers from the National Lawyers Guild, informing them that the protestors could demonstrate but that "if it gets to the point when it is disturbing a lawful public meeting, just like we wouldn't let anyone do it to you, we can't let anyone do it to them." They warned the protestors that they could be arrested under § 403. Eventually, White, who was filming the Walk and the protest, was arrested by the LAPD for violating California Penal Code § 403, after he allegedly yelled loudly less than a foot away from one of the Walk attendees. He was booked and released on bail but was not charged with any violation of the law.

CPR filed a lawsuit against the City of Los Angeles asserting that California Penal Code § 403 is unconstitutional, both on its face and as applied, under the First and Fourteenth Amendments of the Constitution and analogous provisions of the California Constitution.[1] The parties filed cross-motions for summary judgment. The district court granted the City's motion, holding that § 403 is constitutional both on its face

---

[1] CPR notified the California Attorney General that it was challenging the constitutionality of § 403, but the Attorney General did not intervene to defend it.

and as applied, and denied CPR's motions for summary judgment, a preliminary injunction, and declaratory relief. Plaintiffs appeal.

## II.  Void for Vagueness Challenge

California Penal Code § 403 states, in its entirety:

> Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor.

The first exception identified in § 403 is § 302 of the Penal Code.  It concerns meetings "for religious worship" and states, in relevant part:

> Every person who intentionally disturbs or disquiets any assemblage of people met for religious worship at a tax-exempt place of worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where the meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor . . . .

The second exception listed in § 403, and the one particularly relevant to this case, is § 18340 of the Elections Code.  It states, in its entirety:

> Every person who, by threats, intimidations, or unlawful violence, willfully hinders or prevents electors from assembling in public meetings for the consideration of public questions is guilty of a misdemeanor.

The Elections Code defines "elector" as

> any person who is a United States citizen 18 years of age or older and . . . is a resident of an election precinct at least 15 days prior to an election[, or is not a resident but either]
>
> (1) He or she was a resident of this state when he or she was last living within the territorial limits of the United States or the District of Columbia[, or]
>
> (2) He or she was born outside of the United States or the District of Columbia, his or her parent or legal guardian was a resident of this state when the parent or legal guardian was last living within the territorial limits of the United States or the District of Columbia, and he or she has not previously registered to vote in any other state.

Cal. Elec. Code § 321.

*A.   CPR's Challenge*

CPR contends that § 403 is void for vagueness because it is not clear what conduct is subject to the criminal penalties of § 403 and what conduct is covered by § 18340 and thus

excluded from the reach of § 403.  Section 18340 refers to "public meetings for the consideration of public questions," a category of meetings that, argues CPR, appears from the face of the statute to encompass the type of meeting at issue in this case.  Electors, similarly, by the statutory definition, include anyone over 18 who resides in any election precinct. That is a vast group of potential participants that, again, encompasses the participants in the meeting at issue here.

This is significant, argues CPR, because § 18340 sets forth a standard for a misdemeanor that is different from, and higher than, the standard for a misdemeanor under § 403. While a person is subject to criminal penalties under § 403 if he "willfully disturbs or breaks up" a meeting, under § 18340 he is subject to penalties only if he uses "threats, intimidations, or unlawful violence"—more egregious conduct—to hinder or prevent the meeting in question from assembling.  Thus, knowing what type of meeting is covered by § 18340, and therefore excluded from coverage under § 403, is critical to understanding what type of conduct exposes a person to criminal penalties under § 403.

A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  An insufficiently definite statute is void for vagueness.  *Id.* "[S]tandards of permissible statutory vagueness are strict in the area of free expression." *NAACP v. Button*, 371 U.S. 415, 432 (1963).  "Laws that are insufficiently clear are void for three reasons: (1) To avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory

interpretations by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996).

"[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.  Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (internal quotation marks, footnote, and alterations omitted). That § 403 "abuts upon sensitive areas of basic First Amendment freedoms" is evident in the facts of this case and in every available case involving the statute, all of which involve not merely speech or expressive conduct but core political speech.  *See, e.g.*, *In re Kay*, 1 Cal. 3d 930, 936 (1970) (rhythmic clapping during a congressman's speech); *McMahon v. Albany Unified Sch. Dist.*, 104 Cal. App. 4th 1275, 1280–81 (Cal. Ct. App. 2002) (dumping gallons of garbage on the floor during a school board meeting as part of a speech about the problem of litter in the area of the high school); *Saraceni v. City of Roseville*, No. C041085, 2003 WL 21363458, at *2 (Cal. Ct. App. June 13, 2003) (attempting to address the city council and city attorney at a city council meeting after the public comment period had ended); *Norse v. City of Santa Cruz*, 629 F.3d 966, 970 (9th Cir. 2010) (en banc) (giving a silent Nazi salute and whispering to another meeting attendee in city council meetings); *Sanchez v. City of Los Angeles*, No. CV 07–5132 GHK (JC), 2011 WL 6951822, at *2 (C.D. Cal. Oct. 31, 2011) (attending a city council meeting with a pillow case, attached to a shirt, that read "CRA Destroys Communities").

"[A] plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance is unconstitutionally vague or impermissibly restricts a protected activity." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006) (citations, alterations, and internal quotation marks omitted). Where, as here, plaintiffs make a facial constitutional challenge to a state law, "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982).

The California Supreme Court has interpreted § 403 only once. *In re Kay*, 1 Cal. 3d 930, 936–37 (1970), concerned the arrest and conviction of four people for engaging in "rhythmical clapping" and "some shouting for about five or ten minutes" during the speech of a congressman in a public park at an Independence Day celebration. The California Supreme Court noted that § 403 could be read to cover speech protected by the First Amendment. Applying the common presumption that the legislature intended to enact a valid statute, however, it interpreted the statute more narrowly to render it constitutional. It held that § 403 requires "that the defendant substantially impair[] the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." *Id.* at 943. The court specified that criminal sanctions could be imposed "only when the defendant's activity itself—and *not* the content of the activity's expression—substantially impairs the effective conduct of a meeting." *Id.* at 942.

In so construing § 403, the California Supreme Court did not consider the statute's exceptions for political meetings and religious meetings. In fact, the court omitted all reference to the exceptions when citing the statute and in its discussion of the statute's origins.[2] Nonetheless, the court set aside the criminal conviction at issue, concluding that the defendants' rhythmical clapping did not rise to the level of a misdemeanor under § 403.

## B.  Interpretation of Section 403

Because no state or federal court has expressly construed § 403 in relation to § 18340, we interpret those statutes by applying California's rules of statutory construction. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). Under California law, the "fundamental task" of statutory interpretation is "to determine the Legislature's intent so as to effectuate the law's purpose." *People v. Cornett*, 53 Cal. 4th 1261, 1265 (2012) (internal citations and quotation marks omitted). Where the plain language of a statute is ambiguous or uncertain, we may consider "the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." *Id.* (internal citations and quotation marks omitted); *see People v. Van Alstyne*, 46 Cal. App. 3d 900, 911–14 (Cal. Ct. App. 1975) (consulting the legislative history after finding that the statutory definition of marijuana as Cannabis sativa L. was ambiguous despite its specificity).

---

[2] The court quoted an expurgated version of § 403: "Section 403 of the Penal Code provides: 'Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, . . . is guilty of a misdemeanor.'" *Kay*, 1 Cal. 3d at 937–38 (alteration in original).

By its express terms, § 403 does not apply to activity in connection with "an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code."   It is the latter exception for meetings covered by § 18340, namely "public meetings for the consideration of public questions," that is at issue in this case. CPR argues that there is uncertainty as to the type of meetings excluded from § 403 because they are covered by § 18340.

We turn to the legislative history for guidance as to the legislature's intent in excluding meetings covered by § 18340 from coverage by § 403.   *See People v. Yoshimura*, 62 Cal. App. 3d 410, 415–16 (Cal. Ct. App. 1976) (where a defendant asserted that the terms "substance" and "material" in a criminal statute were unconstitutionally vague, the court considered the legislative history of the criminal statute, determined the statute's legislative purpose, and found the terms not to be vague).   The legislative history, although complex, shows that § 403 and the other two statutes it identifies as exceptions were intended to apply to three different types of meetings: religious meetings, political meetings, and all other meetings.

Originally enacted in 1872 as part of the first California Penal Code, § 403 had the headnote "Disturbance of public meetings, other than religious or political"[3] and provided, in terms very similar to today's statute:

---

[3] *See Farraher v. Superior Court of Kern County, Dept. 3*, 45 Cal. App. 4, 5–6 (Cal. Ct. App. 1919) (the heading of the 1872 version of § 403 "must be deemed a part of the substance of the enactment and accorded the same effect as though written into the body of the law" and, therefore, a meeting must be public to fall within this section).

> Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, other than such as is mentioned in Sections 59 and 302, is guilty of a misdemeanor.

Cal. Penal Code § 403 (Haymond & Burch 1874).[4]  The Code Commentator's note to the 1872 Code explained the coverage of the three sections as follows:

> The assembly specified in Sec. 59 is a meeting of electors, held for the discussion of public questions, and that in Sec. 302 a religious meeting.  This section includes funerals, and like lawful meetings, and corresponds with the N. Y. Penal Code, Sec. 473.

---

[4] Compare to the current version of § 403 (differences indicated in bold):

> Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting **that is** not unlawful in its character, other than **an assembly or meeting referred to** in Section 302 **of the Penal Code** or **Section 18340 of the Elections Code**, is guilty of a misdemeanor.

Cal. Penal Code § 403 (Haymond & Burch 1874).[5]  *Cf. People v. Stuart*, 47 Cal. 2d 167, 175 (1956) (using the Code Commissioner's note from 1872 as an indication of prior legislative intent).

In 1872, § 302, the religious-meetings exception to § 403, was very similar to today's version of that section,[6] but the

---

[5]  Section 473 stated:

> Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, other than such as are mentioned in sections 55, 79, and 359, of this Code, is guilty of a misdemeanor.

Draft of a Penal Code for the State of New York ("Fields Draft") § 473 (1864).  The annotation to the Fields Draft explains that "The assemblies specified in the sections referred to are religious meetings, meetings of electors held for discussion of public questions, and funerals."  *Id.*  The California version of the statute does not have a separate statutory section covering funerals and instead incorporates funerals into § 403.

[6]  The 1872 version of § 302 provided:

> Every person who willfully disturbs or disquiets any assemblage of people met for religious worship by noise, profane discourse, rude, or indecent behavior, or by any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor.

Cal. Penal Code § 302 (Haymond & Burch 1874). Compare to the current version of § 302 (deletions indicated by strike-through; additions indicated by bold):

> **(a)** Every person who **intentionally** disturbs or disquiets any assemblage of people met for religious

16      CPR FOR SKID ROW V. CITY OF LOS ANGELES

political-meetings exception, § 59, was notably different from today's § 18340. Section 59, under the headnote "Disturbance of public meetings, misdemeanor," stated, using a structure and a standard very similar to § 403:

> Every person who willfully disturbs or breaks up any public meeting of electors or others, lawfully being held for the purpose of considering public questions, is guilty of a misdemeanor.

Cal. Penal Code § 59 (1874). This section is not the historical predecessor of the current political meetings exception, Elections Code § 18340, however. Section 18340 derived from a different section of the original 1872 Penal Code, specifically § 58. That section was not, in 1872, exempted from coverage under § 403. Section 58 had the heading "Preventing public meetings" and stated:

> Every person who, by threats, intimidations, or unlawful violence, willfully hinders or prevents electors from assembling in public

---

worship **at a tax-exempt place of worship**, by ~~noise,~~ profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where **the** meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor **punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail for a period not exceeding one year, or by both that fine and imprisonment.**

The current statute also contains sections (b)–(f), which provide additional details on penalties for violation of § 302.

> meeting for the consideration of public questions, is guilty of a misdemeanor.

Cal. Penal Code § 58 (1874). This is identical to the language in current Elections Code § 18340, exempted from § 403.

In short, §§ 58 and 59 both applied to "public meetings for the consideration of public questions," but the two sections had different standards for a misdemeanor. Under § 58, it was a misdemeanor to hinder such a meeting "by threats, intimidations, or unlawful violence," while under § 59, it was a misdemeanor simply to "willfully disturb[] or break[] up" such a meeting. Only § 59 was referred to and excluded from the coverage of § 403; § 58 was not mentioned in § 403 at all.

How did it happen that the original 1872 version of § 403 referred to the now-extinct Cal. Penal Code § 59 ("Disturbance of public meetings") but the current version of § 403 refers to a section identical to the 1872 version of § 58 ("Preventing public meetings")? The first step in this shift occurred in 1905 when § 59 of the Penal Code was amended and its text wholly replaced with § 41 of the Purity in Elections Act,[7] which had been passed in 1893. The amended § 59 had the headnote "Force, violence or restraint used to influence votes" in place of the original headnote "Disturbance of public meetings, misdemeanor," and it contained lengthy prohibitions on voting intimidation and

---

[7] The full title was "An Act to promote the purity of elections by regulating the conduct thereof, and to support the privilege of free suffrage by prohibiting certain acts and practices in relation thereto, and providing for the punishment thereof." 1893 Cal. Stat. 12.

interference.  Cal. Penal Code § 59 (1905).[8]  Although § 59

---

[8] The amended § 59 stated, in full:

> It is unlawful for any person, directly or indirectly, by himself or any other person in his behalf, to make use of, or threaten to make use of, any force, violence, or restraint, or to inflict or threaten the infliction, by himself or through any other person, of any injury, damage, harm, or loss, or in any manner to practice intimidation upon or against any person, in order to induce or compel such person to vote or refrain from voting at any election, or to vote or refrain from voting for any particular person or persons at any election, or on account of such person or persons at any election, or on account of such person having voted or refrained from voting at any election. And it is unlawful for any person, by abduction, duress, or any forcible or fraudulent device or contrivance whatever, to impede, prevent, or otherwise interfere with the free exercise of the elective franchise by any voter; or to compel, induce, or prevail upon any voter either to give or refrain from giving his vote at any election, or to give or refrain from giving his vote for any particular person or persons at any election. It is not lawful for any employer, in paying his employees the salary or wages due them, to inclose their pay in "pay envelopes" upon which there is written or printed the name of any candidate, or any political mottoes, devices, or arguments containing threats, express or implied, intended or calculated to influence the political opinions or actions of such employees. Nor is it lawful for any employer, within ninety days of any election, to put up or otherwise exhibit in his factory, workshop, or other establishment or place where his workmen or employees may be working, any hand-bill or placard containing any threat, notice, or information, that in case any particular ticket of a political party, or organization, or candidate shall be elected, work in his place or establishment will lease, in whole or in part, or

no longer had anything to do with public meetings, § 403's exclusion of § 59 was not modified to reflect the change in the function of § 59.  The amendment of § 59 thus rendered § 403's exclusion of meetings covered by § 59 nonsensical, as § 59 was concerned not with meetings at all but with voting interference.  This problem was likely due to an error by the legislature in failing to consider the effect of the amendment of § 59 on § 403 and failing to amend § 403 accordingly.  The error was noticed by Deering editors as early as 1915, but the legislature did not take any steps to amend § 403 at that time.[9]

In 1939, Penal Code §§ 58 and 59, among others, were repealed as part of the adoption of California's first Elections Code.  Section 58 ("Preventing public meetings") became Elections Code § 5004, and § 59 ("Force, violence, or restraint used to influence vote") was split among Elections

---

his place or establishment be closed up, or the salaries or wages of his workmen or employees be reduced, or other threats, express or implied, intended or calculated to influence the political opinions or actions of his workmen or employees. This section applies to corporations as well as individuals, and any person or corporation violating the provisions of this section is guilty of a misdemeanor, and any corporation violating this section shall forfeit its charter.

Cal. Penal Code § 59 (1905).

[9] In the 1915 edition of the California Penal Code, although the statutory text of § 403 still referred to § 59, the Deering's annotations now pointed to a Penal Code § 58, which had not previously been associated with § 403 in any way.  Similarly, the Deering's annotations pertaining to § 58, and not to § 59, referred to § 403.  Cal. Penal Code §§ 403, 58, 59 (Deering 1915).

Code §§ 11581, 11582, 11584–86.  *See* Cal. Elec. Code §§ 11581–82, 11584–86 (Deering Supp. 1939).

Finally, in 1949, the California Special Crime Study Commission on Criminal Law and Procedure reported that "[a] study of the code indicates that the reference to Section 59 of the Penal Code contained in Section 403 should have been to Section 58 which is now Section 5004 of the Elections Code," and recommended amending § 403. SPECIAL CRIME STUDY COMMISSION, FINAL REPORT ON CRIMINAL LAW AND PROCEDURE, Recommendation 13, at 23–24 (1949).  In accordance with this recommendation, § 403 was amended, and its reference to Penal Code § 59 was replaced with a reference to Elections Code § 5004, the successor to Penal Code § 58 and predecessor to § 18340. 1949 Cal. Stat. 2119; Cal. Penal Code § 403 (1955).  Since 1949, § 403 has not been amended substantively.[10]

Thus, § 18340, which is currently exempted from coverage by § 403, is the successor section to § 58, which was not the original exemption.  The substance of § 59, the original exemption from § 403, no longer exists in any form in the California Codes.

---

[10] A mysterious legislative comment appeared in 1976, stating that the Elections Code section (then § 12046, now § 18340) "is needed to prevent conduct which would prevent a meeting from taking place at all, including verbal threats, etc. since Penal Code 403 does not deal with verbal behavior."  Cal. Elec. Code § 29440 (Deering 1977).  This comment contradicts all other indications of the legislative purpose of the exceptions to § 403 and also contradicts the *Kay* court's 1970 interpretation of § 403 as very much covering "verbal behavior," as is clear in its extended First Amendment analysis.  We therefore give this comment little weight.

In the face of this tortuous history of § 403 and its exceptions, one thing remains clear.  The original version of § 403 was enacted with the intent to exempt political meetings from coverage by § 403.  This intent was reaffirmed in 1949, when the legislature, after careful consideration, chose to exclude from § 403's coverage a statutory section as close as possible to the original exception, with the result that the revised version of § 403 excluded the same meetings as had the original version of the statute: political and religious meetings.  As to political meetings, however, unlike general meetings and religious meetings, the legislature established a higher threshold for unlawful conduct than the original exception had done.  The amended political-meetings statute made it a misdemeanor to hinder or prevent such meetings by "threats, intimidations, or unlawful violence," but not to "disturb or break up" such meetings by non-violent means.

## C.  Application of § 403 to CPR's Activities

The plain language of the statute and its legislative history demonstrate that § 403 does not cover political meetings, including the meeting at issue here.  It is a misdemeanor to disrupt such meetings only under § 18340 and only if the disruption consists of "threats, intimidations, or unlawful violence."

The "meeting" at issue here involved the consideration of public questions, namely the conditions on Skid Row, and involved people within the broad definition of "electors." Those invited to participate in the Walk were people whom the CCEA refers to as "stakeholders" in downtown business. As discussed below at 29, this conclusion leads us to reverse the judgment of the district court in part and remand for further proceedings.

*D.   The Void-for-Vagueness Challenge Falls Short*

Based on this understanding of the statute, though, we affirm the portion of the district court's judgment that rejected CPR's facial challenge to § 403 as unconstitutionally vague.  A facial challenge is "the most difficult challenge to mount successfully."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

As expressed in his concurring opinion, Judge Reinhardt takes the position that the construction given to § 403 by the California Supreme Court in *Kay*, 1 Cal. 3d 930, renders the statute unconstitutionally vague because the court disregarded the exception for assemblies covered by Elections Code § 18340.  In support of his position, he cites to subsequent decisions by the California Courts of Appeal and federal courts that also disregarded the exception.    In Judge Reinhardt's view, the disparity between the plain language of the statutory exception and the interpretation in *Kay* that appears to eliminate the exception in a factual context where it should apply is too great for citizens to understand what § 403 actually covers.  We think that conclusion assumes too much.

We agree that the text and legislative history of § 403 demonstrate that it does not apply to assemblies of electors of the type covered in § 18340.  We also agree that the kind of meetings discussed in *Kay* would appear to qualify as a public meeting of electors under the Elections Code.  But we cannot assume that the California Supreme Court intended by its decision in *Kay* to read the statutory exceptions to § 403 out of the statute.

There is no indication in *Kay* that either party raised the question of the applicability of § 403 to political meetings. California appellate courts are not required to consider or discuss arguments that were not developed in the briefs. *People v. Stanley*, 10 Cal. 4th 764, 793 (1995) (noting that if a brief does not contain a legal argument with citation of authorities on the points made, the "'court may treat it as waived, and pass it without consideration'" (quoting 9 Witkin, Cal. Procedure, Appeal § 479 (3d ed. 1985))); *Mansell v. Bd. of Admin.*, 30 Cal. App. 4th 539, 546 (Cal. Ct. App. 1994) ("[I]t is not [the appellate] court's function to serve as . . . backup appellate counsel."). If neither party argued the exception applied, the California Supreme Court would not be required to address the exception in its opinion, even in a case in which the facts would support its application.

Moreover, the *Kay* court concluded that the conduct of the defendants did not substantially impair or disturb the public meeting. *Kay* concerned an Independence Day celebration in a public park with a speech by a congressman who was also a candidate for reelection. 1 Cal. 3d at 935–36. The speech was interrupted by "rhythmical clapping" by protestors who supported a consumer boycott of non-union table grapes, which the congressman had declined to support. *Id.* The California Supreme Court applied § 403 and held that the conduct did not rise to the level required for a misdemeanor. An argument based on the statutory exception would have led to exactly the same result. Courts need not deal with all alternative routes to the same outcome. Any inference based on the failure of the decision to discuss an alternative route rests on an unpersuasive foundation.

The California Courts of Appeal following *Kay* have not addressed the interaction between § 403 and § 18340.  *See McMahon*, 104 Cal. App. 4th at 1286–87; *Saraceni*, No. C041085, 2003 WL 21363458.  Indeed, in no case—state or federal, published or unpublished—in which a court has addressed § 403 did any court construe Penal Code § 403 in relation to Elections Code § 18340.  *See id.*; *Norse*, 629 F.3d at 970, 978; *Sanchez*, 2011 WL 6951822, at *13.  As in *Kay*, there is no indication in any of these cases that the exception to § 403 was raised.[11]

Premising a conclusion that § 403 is unconstitutionally void for vagueness based on an interpretation of that statute that has never actually been expressed by the California Supreme Court or by any court is a leap that we are not prepared to take.  We will not attribute that interpretation to the California Supreme Court based on its silence in *Kay*.  We affirm the portion of the district court's decision that concluded that § 403 is not void for vagueness.

## III.    Other Facial Challenges

CPR also argues that § 403 is an unconstitutional restriction on speech because it is content based, is not narrowly tailored, and does not leave open ample alternative

---

[11] As it happens, the one Ninth Circuit decision cited in the concurring opinion, at 40, to illustrate the application of Penal Code § 403 to a political meeting and judicial disregard of the statutory exception for activity covered by Elections Code § 18340 is an opinion that both Judge Reinhardt and Judge Clifton joined, as members of an 11-judge en banc panel.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc).  It is safe to infer that neither of us, or any other member of the panel, intended to cut the exception out of the statute.  The subject was not raised at the time.

means of communication. The government "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without references to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (en banc) (internal quotation marks and citations omitted).

We "consider a rule content-based when it establishes a general ban on speech, but maintains exceptions for speech on certain subjects." *Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1155 (9th Cir. 2003). CPR argues that § 403 is a content-based restriction on speech because, by its terms, it does not apply to meetings covered by the two exceptions identified above, for religious worship or for public meetings of electors to consider public questions.

The exceptions here, however, distinguish certain types of meetings, not speech on certain subjects at those meetings. Neither Penal Code § 302 nor Elections Code § 18340 pertains to speech itself. They pertain to the contexts in which speech is regulated. The statute is silent with respect to what subject matter of speech may or may not be spoken at such meetings. Indeed, the exemptions from § 403 for religious or electoral meetings are more accurately differences in the standard for disruptive speech rather than actual exceptions. For the same reasons, § 403 also does not prohibit or protect specific messages, as did the flag-burning statute at issue in *United States v. Eichman*, 496 U.S. 310 (1990).

A statute may also be content based if it "would allow or disallow speech depending on the reaction of the audience." *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 787 (9th Cir. 2008). "[L]isteners' reaction to speech is not a content-neutral basis for regulation." *Id.* at 788 (quoting *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992)).

Section 403 does not regulate speech based on audience reaction. The California Supreme Court explained that whether a disturbance triggers a § 403 violation depends on "the actual impact of that misconduct on the course of the meeting; the question cannot be resolved merely by asking persons present at the meeting whether they were 'disturbed.'" *Kay*, 1 Cal. 3d at 944. We agree with the district court that § 403 does not regulate the content of speech.

A content-neutral time, place, or manner restriction on speech is narrowly tailored if it "does not burden substantially more speech than is necessary to achieve a substantial government interest. . . . [T]he existence of obvious, less burdensome alternatives is a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009) (internal citations, quotation marks, and modifications omitted). CPR argues that § 403 is not narrowly tailored because it applies to expressive conduct, no matter how momentary, and sweeps within its breadth large amounts of protected speech.

The government interest at stake in this statute is "ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens'

rights of free association and discussion." *Kay*, 1 Cal. 3d at 941. In short, the statute aims to prevent meetings from being disrupted. A protestor's conduct only violates the statute when it "substantially impair[s] the conduct of the meeting." *Id.* at 943. Further, as *Kay* emphasized, "the nature of a meeting necessarily plays a major role" in determining whether protestor conduct has substantially impaired the meeting. *Id.* "The customs and usages at political conventions may countenance prolonged, raucous, boisterous demonstrations as an accepted element of the meeting process; similar behavior would violate the customs and usages of a church service." *Id.* This contextual inquiry into the "customs and usages" of the meeting along with the substantial-impairment standard narrowly tailor the statute to the government's substantial interest. Contrary to CPR's concerns, neither a momentary disruption nor large amounts of protected speech would fall within the statute's reach.

A time, place, or manner restriction on speech must leave open ample alternatives for communication. Section 403 does. To violate the statute, a protestor must substantially impair or break up a public meeting. The statute does not prevent all protests or means of protest. It requires only that a protest not be so disruptive as to break up or substantially impair the meeting. There is nothing that prevents CPR from communicating its message in non-disruptive ways, and CPR does not allege that it has been precluded from doing so. By allowing protest that does not substantially impair public meetings, § 403 leaves open alternative communication channels.

We therefore agree with the district court that § 403 is not unconstitutional on its face.

## IV.   As-Applied Challenge

Although § 403 is constitutional on its face, it does not properly apply to CPR's protests.  As discussed above at 21, Elections Code § 18340 governs "electors . . . assembling in public meetings for the consideration of public questions." Cal. Elec. Code § 18340.  CPR's activities fall within this exception to § 403 because the Walks they have protested consist of public officials and members of the public who meet on public sidewalks to learn about the challenges in the Skid Row neighborhood.  By its terms, § 403 does not cover meetings that are covered by § 18340, so § 403 does not apply to CPR's activities.

In rejecting CPR's as-applied challenge, the district court did not discuss that question.  Rather, it focused on whether White was arrested based on the content of his speech.  It concluded that "there can be no serious dispute that Mr. White was arrested because his conduct substantially impaired the conduct of the Skid Row Walk and was not based upon, in any manner whatsoever, the content of his chant."  That was true, but it does not speak to the threshold question of whether § 403 applied to that activity in the first place.  Because we conclude that it did not, we reverse that part of the district court's decision and remand for further proceedings, including the consideration of what relief is appropriate.

## V.   Conclusion

We hold that California Penal Code § 403 was unconstitutionally applied to CPR's activities.  Because CPR's activities fall within the exception carved out by Elections Code § 18340, § 403 does not criminalize CPR's

conduct.    Therefore, the district court's order granting summary judgment in favor of defendants and denying summary judgment to plaintiffs is reversed.  We remand for further proceedings, including the determination of what relief, if any, may be appropriate.

Each party to bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's reversal of the district court's judgment in favor of the defendant and its holding that § 403 of the Penal Code may not be applied to plaintiffs. I would reach the latter decision, however, by holding that § 403 (and §§ 18340 and 302 as well) are unconstitutionally void for vagueness and not simply as applied in the particular circumstances.  In addition, although I would not decide the question, I believe the statutory scheme, or at least a part of it, is likely also unconstitutional as content-based. Essentially, I believe that the majority's decision simply does not go far enough and will lead to unnecessary confusion regarding the applicability of the various sections of the antiquated statutory scheme to expressive conduct that interferes with or disrupts various types of public meetings. More important, it will leave the citizens of California without clear guidance as to the exercise of their First Amendment rights to engage in public protests.  That, in my view, is not an acceptable result.

I.

Penal Code § 403 applies broadly to lawful meetings.  It provides simply that anyone who "willfully disturbs or breaks up" such a meeting is guilty of a misdemeanor.  Cal. Penal Code § 403.  Under that provision a willful disturbance is enough to support a criminal conviction.  Section 403 contains two exceptions, however: meetings referred to in Elections Code § 18340, and meetings referred to in Penal Code § 302.  Section 403 and its statutory exceptions thus form an integrated statutory scheme, and no definition of § 403 can be derived without also defining these exceptions.

The first exception, § 18340, governs political meetings, defined as "public meetings" in which people "assembl[e] . . . for the consideration of public questions."  Cal. Elections Code § 18340.  This provision is far more protective of expressive conduct than is § 403.  Section 18340 criminalizes conduct only if it unlawfully hinders meetings through the use of "threats, intimidations, or unlawful violence."  *Id.*  Section 302 governs religious meetings, defined as "any assemblage of people met for religious worship at a tax-exempt place of worship."  Cal. Penal Code § 302.  It specifically proscribes the use of "profane discourse, rude or indecent behavior, or . . . any unnecessary noise" to "intentionally disturb[] or disquiet[]" a religious meeting, when the conduct is in or near the place of worship.  *Id.*  Because meetings covered by § 18340 (political) and § 302 (religious) are excepted from § 403, and because these provisions proscribe different levels of conduct than does § 403, in order to determine whether § 403 survives a facial challenge for vagueness it is critical to know what meetings are covered by that section and what meetings are covered by its statutory exceptions.  Unfortunately, it is not possible to

determine the answer to that question if we follow the law that controls our decision-making, including our obligation to accept the construction of California statutes by the California courts. Here, § 403, as construed by California's Supreme Court and by its Courts of Appeal, is unconstitutionally vague; the end result of the courts' decisions is that the statutory scheme as construed fails to give clear notice of what meetings fall within § 403 and what meetings are covered by § 18340 or even by § 302. In fact, the California cases leave the people of that state without any guidance as to when conduct is unlawful because it merely willfully disturbs a meeting and what conduct is unlawful only if committed by means of threats, intimidations, or unlawful violence. This void is especially harmful to the public interest as it pertains to expressive conduct that is subject to the protection of the First Amendment. The failure to provide notice of what expressive conduct is permitted and what is prohibited chills First Amendment rights and thus makes vagueness even more constitutionally unacceptable.

I agree with the majority's conclusion that the plain language of § 403 and its legislative history support the conclusion that the provision does not cover political meetings, including the meeting at issue in this case. I disagree, however, as to the effect of the decisions of California's state courts, including its Supreme Court. Those courts have applied § 403 to the very type of meeting at issue here. To follow those decisions would lead us to the opposite result than would the plain language of § 403 and its legislative history, yet to ignore them is wholly impermissible. The decisions uniformly apply § 403 to political meetings and thus, contrary to the express exception the provision contains, criminalize disruptions of political

meetings by acts that fall far short of "threats, intimidations, or unlawful violence." Cal. Elections Code § 18340.

Unlike the majority, I do not believe that we can simply disregard the consistent application of a state statute by the state courts, including its Supreme Court, and by the federal courts that have followed the state courts' decisions. Because we must follow the state courts' interpretation of the statute, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982), the crux of our statutory analysis here must be the meaning given to § 403 by the California courts. As California courts have given § 403 a fundamentally different application than the statute's plain language and legislative history would require, and have failed consistently to apply the controlling statutory exception to political protests, I believe that it is not possible for Californians to know in advance what conduct is prohibited by § 403 and what is permissible under the far more speech-protective provisions of § 18340. In short, it is not possible to determine what conduct involving the disruption of political meetings is prohibited by which part of the California statutory scheme and what conduct is permissible under the statutory scheme as a whole. As a result we have no alternative but to declare § 403 and its related sections void for vagueness.

As to the controlling law, there is one California Supreme Court case, two Courts of Appeal cases and several federal cases applying § 403, each of which does so in a manner directly contrary to that required by the statute's plain language and legislative history. Each applies § 403 to interference with meetings that are undisputably political. None applies the exception that on its face governs such meetings. In *In re Kay*, 1 Cal. 3d 930 (1970), the only

California Supreme Court decision directly construing § 403, the Court applied § 403 to a political meeting clearly falling within the ambit of Elections Code § 18340 and clearly exempted from § 403 by its express language. *Kay* concerned four people convicted under § 403 and sentenced to four months in jail for protesting a congressman's speech in a public park by engaging in "rhythmical clapping" and several minutes of shouting. *Id.* at 935–37. The *Kay* court noted that it would be "blinking reality not to acknowledge that the [congressman's] July 4 speech was part [of] his political campaign," and acknowledged that the speech was by a public figure on a public issue. *Id.* at 963 n.3 (citation and internal question marks omitted).

Recognizing that the application of § 403 to the conduct in question would be constitutionally overbroad, because it would criminalize expressive conduct that disturbs "a meeting only because the content of the expression conflicted with the views espoused by the meeting's organizers or official speakers," *id.* at 941, the *Kay* court narrowed the statute to comport with the First Amendment, *id.* at 942. The court held that under § 403 conduct could be punished only where the "defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." *Id.* at 943. Without mentioning the exclusion of political meetings from § 403, the court then applied that section and not § 12046 (as § 18340 was then numbered) to the political meeting at issue, ultimately finding that the conduct at issue did not rise to the level proscribed under the court's narrowed construction of § 403. *Id.* at 944–45.

Although intended to bring (what it apparently thought to be) § 403's proscription of interference with a political meeting into conformity with the First Amendment, *Kay* provided no guidance as to what types of political meetings are covered by § 403 and what types, if any, are excluded from § 403 and covered by § 18340.  Nor did it indicate in any way the relationship between the two parts of the integrated statutory scheme regulating core political speech. To the contrary, it simply treated § 403 as applicable to political meetings.  *Kay* and the cases which followed it—every California political speech case, as far as I can tell—thus give rise to a fundamental lack of certitude as to how and to what extent Californians are free to exercise their First Amendment rights without fear of criminal punishment when they engage in protests that disturb political meetings but do not involve "threats, intimidation, or unlawful violence".    Similarly, limiting their exposure to the "commi[ssion] [of] acts in violation of implicit customs or usages" as did the *Kay* court, does nothing to cure that constitutional defect.  *Id.* at 943.

The majority concludes that the *Kay* court's application of § 403 to a political meeting and its failure to apply the statutory exceptions to § 403, does not render the statute unconstitutionally vague because there is no indication that either party argued that § 403 did not apply to political meetings, and because the *Kay* court was thus not required to address Elections Code § 18340 (even though it, not § 403, was the statutory provision applicable to the meeting).  I respectfully disagree with the majority's conclusion that *Kay* does not constitute binding precedent as to the applicability of § 403, as, it appears, do all state and federal courts that have dealt with the question of political meetings since *Kay*. All have unhesitatingly followed *Kay* and applied § 403 to

political meetings in direct contradiction of the express provisions of that statute. The majority's rationale for its conclusion is that *Kay* doesn't expressly hold that § 403 applies to political meetings, so we can simply ignore the case. No court to date, state or federal has taken that position. To the contrary, all have followed *Kay* and applied § 403 not § 18340 to interference with the conduct of political meetings.

### A.

Although it is of course true that courts are under no obligation either to address arguments the parties fail to raise in their briefs or provide alternative grounds for their holdings, it is also true that courts must interpret statutes with reference to the entire statutory scheme and seek to give meaning to every provision. *People v. Pieters*, 52 Cal. 3d 894, 899 (1991) ("[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (quoting *Clean Air Constituency v. Cal. State Air Res. Bd.*, 11 Cal.3d 801, 814 (1974))); *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627, 634 (1997) ("'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . .'" (quoting *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1159 (1991))). Thus, canons of statutory construction oblige courts to consider the entire statute even where the parties fail to argue one of its relevant provisions. As the United States Supreme Court has recognized, legislative bodies must "be able to legislate against a background of clear interpretive rules, so that [they] may know the effect of the language

[they] adopt[]." *Finley v. United States*, 490 U.S. 545, 556 (1989).

Here, the California Supreme Court was not required to review a set of complex provisions contained in a statutory scheme set forth in a lengthy section of a voluminous Code. Section 403 consists of a single sentence that occupies only two and a half lines.  All the court needed to do was to read that sentence and it would know (as I am sure it did) that § 403 did not apply to all meetings, but that on its face it excluded certain types of gatherings.  Sophisticated as that nationally respected court was and sensitive as it demonstrated itself to be to the requirements of the First Amendment, it is inexplicable that the Court would be unaware that political speech was excluded from the coverage of § 403 by the second half of that one sentence provision. Nevertheless the court proceeded to analyze and apply § 403 to conduct that allegedly interfered with the political meeting in question. To suggest that the California Supreme Court would revise and limit § 403 in an attempt to bring it into conformity with the First Amendment without being aware of the effect of the exclusion contained within the one sentence it was revising or without being aware that its holding applied to political meetings is simply not credible.

Generally, when an appellate court analyzes a statute in a precedential opinion, it is not simply resolving the parties' dispute, but is explaining the law in a manner that will bind future litigants and courts.  This is particularly true in a decision based on constitutional grounds.  The majority's reading of *Kay* in a manner that contravenes this rule might have some credence had the California Supreme Court stated that its decision was a narrow one applicable only to the case before it, or given some indication that its construction of

§ 403 would not be applied if, in a subsequent case, the party argued that political meetings are excluded from § 403. The court took neither approach, however. By omitting any discussion of why a speech by a local congressman to more than 6,000 people is not a "public meeting[] for the consideration of public questions," and thus excluded from coverage under § 403, and by instead tailoring (unsuccessfully in my view) § 403 to meet the requirements of the First Amendment, the *Kay* court left the ordinary person with no basis for understanding why and when the more speech friendly provision of § 18340 would apply, if it would ever apply at all. Yet, there it is, plain on the face of the statutory scheme, both in the exclusion from § 403 of meetings referred to in § 18340 and in the express language of § 18340 itself. Section 403 does not apply to political meetings; section 18340 does.

## B.

Even were we to accept *arguendo* the majority's unpersuasive explanation that the *Kay* court found it unnecessary to discuss Elections Code § 18340 because it determined the conduct at issue did not violate the lesser restrictions imposed by Penal Code § 403, the same cannot be said for the California Courts of Appeal cases applying *Kay* to political meetings and *affirming* violations of § 403, in reliance on *Kay*. In *McMahon v. Albany Unified Sch. Dist.*, 104 Cal. App. 4th 1275 (Cal. Ct. App. 2002), the California Court of Appeal followed *Kay* and likewise omitted any discussion of Elections Code § 18340 in concluding that a violation of Penal Code § 403 had occurred. The case concerned the citizen's arrest of David McMahon at a school board meeting held in the multipurpose room of an elementary school, which was also used as the school's

cafeteria and for an after-school childcare program. *Id.* at 1280. During the public comment period, McMahon emptied onto the floor several 13-gallon bags of garbage, that contained alcohol bottles and drug paraphernalia, in order to protest littering by local high school students. *Id.* at 1280–81. The superintendent then made a citizen's arrest of McMahon for violating Penal Code § 403; McMahon was subsequently issued a citation by the police, but was not charged. *Id.* at 1281. McMahon sued the superintendent, a board member, and the school district for false arrest and false imprisonment. *Id.* The court denied McMahon's motion for a directed verdict, granted a nonsuit as to the board member, and a jury returned a special verdict in favor of the district and superintendent. *Id.* at 1281–82.

The Court of Appeal affirmed. *Id.* It determined that the trial court's jury instruction on the elements of § 403 conformed with *Kay*, and that the jury's conclusion that McMahon violated § 403 was supported by substantial evidence. *Id.* at 1286–87, 1289. The court discussed *Kay* at length, upheld the application of § 403 to the meeting in question, and made no mention of the statutory exceptions for meetings for the consideration of public questions or why Elections Code § 18340 did not apply to McMahon.

The California Court of Appeal similarly relied on *Kay* in an unpublished decision, *Saraceni v. City of Roseville*, No. C041085, 2003 WL 21363458 (Cal. App. Ct. June 13, 2003). In *Saraceni*, the court held that a police officer had probable cause to arrest the plaintiff at a city council meeting for violating Penal Code § 403, where the plaintiff attempted to address the council and city attorney after the public comment period had ended, and refused repeated requests from the mayor and council members to take his seat. *Id.* at

*5–6.   Like the meeting in *McMahon*, the meeting in *Saraceni* was unquestionably one at which people "assembl[ed] in public meeting[] for the consideration of public questions." Yet, like the court in *McMahon*, the court in *Saraceni* citing *Kay* applied § 403 to a political meeting without any discussion of Elections Code § 18340.

Even in the absence of *Kay*, we would be bound by the *McMahon* court's construction of § 403 short of a persuasive indication that the California Supreme Court would decide otherwise. *Lawson v. Kolender*, 658 F.2d 1362, 1364 n.3 (9th Cir. 1981), *aff'd by Kolender v. Lawson*, 461 U.S. 352 (1983) (noting that the construction placed on a statute by a state's intermediate appellate court is regarded as authoritative); *Morales-Garcia v. Holder*, 567 F.3d 1058, 1063 n.3 (9th Cir. 2009) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise" (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940))).  No persuasive data indicate that the California Supreme Court would decide *McMahon* differently with respect to the application of § 403.  All data are to the contrary: *McMahon* faithfully follows *Kay*—the only relevant decision by the state's highest court—which applied § 403 to a political meeting while ignoring Elections Code § 18340.  Moreover, although not binding on this court, the Court of Appeal's unpublished decision in *Saraceni* is persuasive authority further illustrating the way in which California courts apply § 403.  *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value." (quoting

*Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997))).

Federal courts have likewise applied Penal Code § 403 to political meetings in accord with *Kay*, and ignored the statutory exception in Elections Code § 18340, dismissing § 1983 claims for false imprisonment and false arrest for arrests at political meetings on the ground that the arresting officers had probable cause to arrest the plaintiffs based on violations of Penal Code § 403.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 970, 978 (9th Cir. 2010) (en banc) (finding probable cause existed to arrest plaintiff at city council meetings for giving a silent Nazi salute and whispering to another meeting attendee); *Sanchez v. City of Los Angeles*, No. CV 07–5132 GHK (JC), 2011 WL 6951822 (C.D. Cal. Oct. 31, 2011) (citing *Kay* and finding probable cause existed to arrest plaintiff for attending a city council meeting with a pillow case attached to a shirt that read "CRA Destroys Communities").

To what then does § 18340 apply?  To what type of meetings Californians might want to protest does § 403 apply, and what type of political and religious meetings are excluded from that provision?  The California and federal cases construing § 403 give us no help with these questions.  More important, they leave "ordinary people" unable to "understand what conduct is prohibited." *Kolender*, 461 U.S. at 357.  Is it a violation of the statutory scheme simply to willfully disturb a political meeting by "committing acts in violation of implicit customs or usages," as provided by § 403 or is it an offense to disrupt such a meeting only by "threats, intimidations, or unlawful violence" as § 18340 provides? And do some political meetings fall in one category and some

in the other?  And, if so, how does anyone tell which fall where?

Although I agree with the majority that the plain language and legislative history of Penal Code § 403 suggest that the statute does not properly apply to White's activity, I conclude that *Kay*, and particularly *McMahon* and *Saraceni*, limit our ability to apply a plain language reading of the statute so as to find that White's conduct falls outside the conduct proscribed by Penal Code § 403.  Rather, I find that *Kay* and *Kay*'s progeny have left the statutory scheme comprehended by § 403 and its express exceptions without any means of rational construction, and the people of California without any means of determining how and when the various sections apply.  In short, because Californians are not adequately informed of how or in what manner they must comport themselves when engaged in protests regarding political gatherings (such as a political party's national convention) or, critically, under what circumstances they face criminal punishment for engaging in such First Amendment activity, there is no alternative but to find that § 403 and its related sections are unconstitutionally vague.  *Kolender*, 461 U.S. at 357.

## II.

Although I do not find it necessary to reach the issue, I strongly question the majority's determination that the statutory scheme is not content-based.  Penal Code § 403 and its statutory exceptions impose punishment on different forms of expressive conduct on the basis of the subject matter of the meeting being protested.  This is a form of protection for more favored or less favored speech which cannot be done indirectly any more than it could be directly.  *Clairmont v.*

*Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011) ("Where the government may not prohibit certain speech, it also may not [indirectly suppress that speech] in order to 'produce a result which [it] could not command directly.'" (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)) (alteration in original)).  Moreover, the majority ignores the significant correlation between the subject matter of the meeting being protested and the subject matter of the speech likely to be used to disrupt it.  For example, as the foregoing discussion of the caselaw illustrates, speech used to disrupt political meetings is, by and large, political speech.  In addition the type of speech that is regulated or banned when interfering with a religious issue is involved is speech that is "profane discourse, rude or indecent behavior, . . . ."  Not only is the type of speech regulated on the basis of the subject of the meeting but so is the manner in which that speech is delivered.  Because I need not resolve this question I will end the analysis by saying simply that whatever one might say about two of the three sections under discussion here, the section of the statutory scheme governing "profane discourse, [and] rude or indecent behavior" seems to me to be clearly unconstitutional either because the proscription of those forms of speech are content-based, because the provision is void for vagueness, or because it otherwise violates the fundamental principles of the First Amendment.

* * *

The difference between my position and the majority's does not simply reflect an intellectual or academic disagreement about judicial methodology. The case before us has important practical ramifications. California is a highly active political state with numerous political parties and volunteer political groups many of which regularly hold

political meetings, some of which are the object of fervent demonstrations or protests. Equally, if not more important, California has on a number of occasions, including six in the period between 1956 and 2000, been the site of national conventions of the two major political parties. Some of these conventions have also been marked by major political protests or demonstrations, not all of which have been entirely peaceful. In view of the failure of the California courts to treat the question before us with the careful constitutional attention it deserves, it would be nice if our court could get the answer right. I am afraid that my colleagues in the majority fail to do so.

* * *

The holding that I believe we are required to reach—that § 403 and its related provisions are void for vagueness— would not only be more respectful of the California courts than the majority's ruling but would better serve the people of that state.  If the State of California were to review the three code sections that form the integrated statutory scheme—the general provision, Penal Code § 403, the political meetings provision, Elections Code § 18340, and the religious meetings provision, Penal Code § 302—and the checkered history of those sections, it might find that it wishes not merely to amend its laws to bring them into conformity with the Constitution, but also to consider how best to update the antiquated provisions that have persisted since they were originally drafted in the nineteenth century. "Rewriting the statute[, however,] is a job for the [state] legislature, if it is so inclined, and not for this court." *Valle del Sol, Inc.*, 732 F.3d at 1021.  Thus, I can only suggest to the Legislature that it might be well-advised to reform the

44     CPR FOR SKID ROW V. CITY OF LOS ANGELES

statutory scheme rather than to allow the continuing enforcement of clearly unconstitutional laws.